THE PITTSBURGH, FORT WAYNE AND CHICAGO RAILWAY CO. AND THE PENNSYLVANIA RAILROAD CO. *v.* EMILY BINGHAM, ADMINISTRATRIX OF WALLACE B. BINGHAM, DECEASED.

A railroad company is not liable for an injury to a person resulting from its failure to exercise ordinary skill and care in the erection or maintenance of its station-house, where, at the time of receiving the injury, such person was at such station-house by mere permission and sufferance, and not for the purpose of transacting any business with the company or its agents, or on any business connected with the operation of the road.

ERROR to the District Court of Stark county.

The original action was brought by the defendant in error as the personal representative of her deceased husband, Wallace B. Bingham, against the plaintiff in error, under the act requiring compensation to be made for causing death by a wrongful act, neglect, or default, passed March 25, 1851.   (2 S. & C. 1139.)

The deceased was at the plaintiff's station-house in Massillon, on December 5, 1870, and while there was struck by a portion of its roof, torn off by wind, and blown, during a violent storm, from the building, with such force against and upon him as to cause his death.   The plaintiffs in error—one the owner of, and the other the lessee operating the railroad—were charged with the wrongful act and neg-

lect alleged to have resulted in the death of Bingham, consisting in negligence in the construction and maintenance of said station-house; the plaintiff below claiming it to have been defectively and unskillfully constructed, and maintained and used in an unsafe and insecure condition.

Issue was joined upon the question of negligence, and the cause submitted to a jury. Upon the trial, evidence was given which tended to show that the deceased, on the day, and at the time of receiving the injury resulting in death, was at said passenger depot or station-house, not for the purpose of transacting any business with the company, its agents or servants, or with any one rightfully there, nor on business in anywise connected with the operation of the road; but being out of employment was there for pastime or pleasure, or as a place of safety during the continuance of what appears to have been a violent storm. After the testimony was concluded, the court instructed the jury, in substance, that if the deceased was at, in, or near said depot, not on any business, but " was there by the tacit permission of, and without objection from," the company operating the road, "its agents or servants, and there peaceably and innocently, relying upon such station-house as a place of security," and was free from negligence contributing to his injury and consequent death, and ordinary care and skill were not employed in the construction and maintenance of the station-house, but from want of such care and skill it was defectively and insufficiently constructed, and imprudently and negligently maintained and used, and by reason thereof the deceased lost his life, the company was liable. The defendant below excepted to that part of the charge that held it to be the duty of the company to have exercised due care in the construction and maintenance of the building, if the deceased entered and was there by " mere permission and without objection;" and from a judgment against it, carried the cause to the district court, where the judgment of the common pleas was affirmed. A petition in error is now prosecuted here to reverse both judgments. Only so much of what occurred at the trial is

stated as is necessary to show the relevancy of the question considered and decided.

*J. T. Brooks*, for plaintiff in error:

The duty upon the part of the defendants to exercise care toward the plaintiff depended upon the question whether the plaintiff was in the exercise of a legal right at the time of the injury. And it made no difference that he may have been there by the *silent permission* or *license* of the defendants. If he was not there , by legal right, he took the premises *as he found them*, with all the concomitant perils. *Sweeny* v. *Old Colony, etc., Railroad Company*, 10 Allen, 368, 372; 1 Red. on Railways, 474, sec. 126, par. 15; *Zoebisch* v. *Tarbell*, 10 Allen, 385; *Griffiths* v. *L. & N. W. R. R. Co.*, 14 Law Times (N. S.), 797; S. & R. on Neg., sec. 447 and notes; *Bancroft* v. *B. & W. R. R. Co.*, 97 Mass. 275; Wharton on Neg., sec. 352; *Gillis* v. *Penn. R. R. Co.*, 8 Am. Law Reg. (N. S.) 729; 59 Penn. St. 129; 22 How. (U. S.) 461; 24 Ib. 307; 2 Curtis C. C. 141; 9 Wall. 146; 2 Har. 481; 3 Blatch. C. C. 37, 276, 517; 14 N. H. 307; S. & R. on Neg., secs. 308–310; *Kay* v. *Penn. R. R. Co.*, 65 Penn. St. 269.

*W. A. Lynch*, for defendant in error:

Did the court err in permitting a recovery if the jury found Bingham at the depot by the tacit permission of, and without objection from the defendant, the Pennsylvania Railroad Company, its servants or agents, if there peaceably and innocently, relying upon such station-house as a place of security.

The whole argument turns on the question: Did the company owe any duty to any one at the depot, as supposed by the proposition above stated? It is claimed that it owed to such a one no duty, and therefore negligence can not be alleged. I admit there is, in such case, no duty depending on contract, or growing out of any special relation or privity between the parties; but the law recognizes many duties of property-owners independent of such rela-

tion or privity. *Callahan* v. *Warne,* 40 Mo. 135; *Johnson* v. *Patterson,* 14 Conn. 1; *Kerwhacker* v. *R. R. Co.,* 3 Ohio St. 172; 65 Penn. St. 269; *Young* v. *Harvey,* 16 Ind. 314; 44 Penn. St. 375; 7 Met. 602; 1 Duer, 571; 66 Penn. St. 345; *Baker* v. *Portland,* 58 Me. 199; *Spofford* v. *Horton,* 3 Allen, 176; *Welch* v. *Wesson,* 6 Gray, 505; *Steele* v. *Burkhardt,* 104 Mass. 59; *Kearns* v. *Lowdon,* Ib. 63; *Hall* v. *Corcoran,* 107 Mass. 251; *Sutton* v. *Wanwatosa,* 29 Wis. 21.

BOYNTON, J. We find in the record of the present case among the questions argued, but one deserving consideration; and that one may be stated as follows:

" Is a railroad company bound to exercise ordinary care and skill in the erection, structure, or maintenance of its station house or houses, as to persons who enter or are at the same, not on any business with the company or its agents, nor on any business connected with the operation of its road; but are there without objection by the company, and therefore by its mere sufferance or permission?" We must give to this question a negative answer. A careful examination of the adjudged cases bearing on the point has led to the discovery of none supporting, much less sustaining, the proposition contended for by the defendant in error. The question in its legal bearings is kindred to the one decided and settled in a class of cases, of which *Hounsell* v. *Smith,* 7 C. B. N. S. 731, is an example. In that case the plaintiff fell into a quarry, left open and unguarded on the uninclosed waste lands of the defendant, over which the public were permitted to travel. In an action for the injury, it was held that the owner was under no legal duty or obligation to fence or guard the excavation, unless it was so near to a public road or way as to render it dangerous to travel thereon. The court say, " The person so traveling over such waste lands must take the permission with its concomitant conditions and, it may be, perils." That an owner is not liable for an injury from pitfalls or excavations to one who enters his premises uninvited, and by mere license or permission, is well sustained by the authorities.

3 Best & Sm. 244; *Hardcastle* v. *The South Yorkshire Ry. Co.*, 4 Hurlst. & N. 67; *Sweeny* v. *Old Colony and Newport R. R. Co.*, 10 Allen, 372; *Knight* v. *Abert*, 6 Barr, 472; Roscoe's Ev. at Nisi Prius, 719

In *Southcote* v. *Stanly*, 1 Hurlst. & N. 247, L. J. 25 Ex. 339, a visitor at defendant's house was injured by the falling of a glass door, through the negligence of the defendant. It was held that the plaintiff having, *pro hac vice*, become an inmate of the defendant's family, a rule similar to that of fellow-servants applied. In *Peirce* v. *Whitcomb*, 48 Vt. 127, plaintiff and defendant went to defendant's barn, at night, to measure up some oats, which the defendant sold to the plaintiff for the latter's accommodation, having none he wished to sell. While the defendant was looking for a measure, the plaintiff, walking about the barn in the dark, fell through a hole in the floor, and was injured. It was held he could not recover.

But, if such dangerous place or pitfall or excavation is by the side of a public road or footway, along, or over which, the public have the right, and are accustomed to travel, it becomes the duty of the owner to adopt suitable and reasonable precautions to guard the public against injury resulting from the proximity of such dangerous place to the highway thus rightfully enjoyed. *Barnes* v. *Ward*, 67 Eng. C. L. 393; *Firmstone* v. *Wherley*, 2 D. & L. 208, Pollock, B.; *Corby* v. *Hill*, 4 C. B., N. S. 556; *Hargreaves* v. *Deacon*, 25 Mich. 5; *Young* v. *Harvey*, 16 Ind. 314; *Mullen* v. *St. John*, 57 N. Y. 567. Or, if a structure is erected near the line of another's land, and falls over on it to his injury, the owner of the structure is liable. *Schwarts* v. *Gilmore*, 45 Ill. 455; Shearm. & Redf. on Neg., par. 498.

The principle underlying the cases above cited recognizes the right of the owner of real property to the exclusive use and enjoyment of the same without liability to others, for injuries occasioned by its unsafe condition, where the person receiving the injury was not in or near the place of danger by lawful right; and where such owner assumed no responsibility for his safety by inviting him there, without

giving him notice of the existence or imminence of the peril to be avoided. In such cases the maxim *sic utere tuo ut alienum non lædas* is in no sense infringed. In its just legal sense it means "so use your own property as not to injure the *rights* of another." Where no right has been invaded, although one may have injured another, no liability has been incurred. Any other rule would be manifestly wrong.

Actionable negligence exists only where the one whose act causes or occasions the injury owes to the injured person a duty, created either by contract or by operation of law, which he has failed to discharge. In *Burdick* v. *Cheadle*, 26 Ohio St. 393, the owner of a store building had leased it to a tenant, who was in the occupancy of the same, selling goods therein. Certain shelvings and fixtures not properly secured, fell, and injured the plaintiff, a customer of the tenant, for which injury the customer brought an action against the landlord. It was said by McIlvaine, J., that there was no privity between the owner of the property and the plaintiff, and that the former owed no duty to the latter which was violated by a careless construction or fastening of the fixtures; and that the fact that the room was to be kept open to the customers of the tenant did not affect the question.

But the question naturally arises, to what extent does the right of a railroad company to the control and use of its real property differ from that of a general owner of land not burdened or incumbered with a public charge? What restrictions and limitations are imposed upon the use and enjoyment of the real property of the company that do not exist in the case of the ownership of property not employed for public purposes? These questions are not difficult to answer. The right to the possession and control of the property of a railroad corporation for all purposes contemplated by its charter, and to enable it to accomplish the

objects for which it was created, is indispensable to the proper discharge of the duties it owes to the public. By accepting a grant of corporate power from the state, it bound itself to do and perform certain things conducive to the public welfare. And those things consist principally in the duty to carry and transport persons and property from one point on its road to another, under such reasonable rules and regulations as it may prescribe to itself, or as may be prescribed by more general law. The obligation to carry, thus assumed, can not be disregarded or rejected at pleasure. It is an indispensable condition to the right to exercise corporate functions. The duty to carry is correlative to the existence of the corporate power of the company, and ceases only with a surrender of its corporate privileges. It is, therefore, a right that the public have to enter upon the premises of the company at points designed or designated for receiving passengers, and upon compliance with the rules governing the transportation of persons to be carried over its road to such points thereon as they may desire. The right of the public to enter is co-extensive with the duty of the company to receive and carry. It, however, can not be extended beyond this. For all purposes not connected with the operation of its road, the right of the company to the exclusive use and enjoyment of the corporate property is as perfect and absolute as is that of an owner of real property not burdened with public or private easements or servitudes.

The case of *Nicholson, Administratrix*, v. *The Erie Railway Co.*, 41 N. Y. 525, rests upon this principle. The company had left on a branch track four empty cars and one loaded one. The brakes to the four cars were not set or secured, and they were started by a violent wind and ran against the loaded car, propelling it forward and causing it to run against and over the plaintiff's intestate, who was upon the track, killing him. The place where the branch track was constructed, was open and unfenced, and was

customarily used by the people in the vicinity as they had occasion to use it, without objection by the company. The court instructed the jury that it was the duty of the company to set the brakes, and that if it left the cars without doing so, or otherwise securing them, it was a violation of duty on its part. This instruction was held erroneous. It is said in the opinion that no relation existed between the company and the deceased creating any particular duty, and that the company "had the same unqualified right which every owner of property has, to do with his own as he pleases, and keep it and use it where and as he pleases, on his own ground, up to the point when such use becomes a nuisance."

It is doubtless true that a railroad company, by erecting station-houses and opening them to the public, impliedly license all persons to enter. But it is equally true that such license is revocable at the pleasure of the company as to all persons who are not there on business connected with the road, or with its servants or agents. *Commonwealth* v. *Powers*, 7 Met. 596; *Nicholson* v. *The Erie Railway Company*, supra, 532. In *Harris* v. *Stevens*, 31 Vt. 90, it is said: "The right to enter (a depot) and remain, exists only by virtue of, and as incident to, the right to go upon the train, and it is to be extended so far only as is reasonably necessary to secure to the traveler the full and perfect exercise and enjoyment of his right to be carried upon the cars." An implied license to enter a depot creates no additional duty upon the part of the company as respects the safety of the building entered. Its only effect is to make that lawful, which, without it, would be unlawful. *Wood* v. *Leadbitter*, 13 M. & W. 838. It is a waiver or relinquishment of the right to treat him who has entered as a trespasser.

In *Sweeny* v. *Old Colony and Newport Railroad Company*, 10 Allen, 372, the court say: "A licensee, who enters on premises by permission only, without any enticement, allurement, or inducement being held out to him by the owner

or occupant, can not recover damages for injuries caused by obstructions or pitfalls: He goes at his own risk and enjoys the license subject to its concomitant perils." "No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not expressly invited to enter, or induced to come upon them by the purpose for which the premises are appropriated or occupied." The inducement here spoken of must be equivalent to an invitation to enter. *Carlton* v. *Franconia Iron and Steel Co.*, 99 Mass. 216. Mere permission is neither inducement, allurement, nor enticement.

The case of *Tobin* v. *The P. S. & P. R. R. Co.*, 59 Maine, 183, cited by defendant's counsel, instead of supporting the defendant's claim, sustains the opposite. The plaintiff was a hackman, carrying passengers to the cars, and while stepping from his carriage to the platform, was injured by a defect in the latter, occasioned by a want of ordinary care in the company. A recovery was sustained, on the ground that a "hackman carrying passengers to the railroad depot for transportation, and aiding them to alight upon the platform of the company, is as rightfully upon the same as the passengers alighting."

A recovery was also sustained in *Toledo, Wabash and Western Railway Co.* v. *Grush*, 67 Ill. 262, for an injury to the defendant, resulting from stepping accidentally through a hole in the platform, carelessly left open, the defendant being at the depot looking for freight belonging to his employer. The case of *Gillis* v. *Pennsylvania Railroad Co.*, 59 Penn. St. 129, fully sustains the position and claim of the plaintiffs. It was there held that the platform of a railroad company, at its station, is in no sense a public highway; that it is not dedicated to public use; that it is for the accommodation of passengers; but, being uninclosed, persons have the privilege, but not the legal right of walking over it for other purposes; and that "the owner is not liable to a trespasser, or one who is on his property by

mere permission or sufferance, for negligence of himself or agents." Applying the principle thus settled to the present case, it leaves but little doubt that the court was in error in holding the company to such a measure of care, or to such a rule of responsibility. In the circumstance supposed—the presence of the deceased at the depot by the mere sufferance or permission of the company—it was under no legal obligation to protect him from danger, not known to exist, although the unsafe condition of the building that gave rise to such danger was a consequence of a failure to exercise ordinary care, prudence, and skill in its structure or in its maintenance. *Carlton* v. *Franconia Iron and Steel Co.*, 99 Mass., *supra.*

His presence at the depot was uninvited, and the company did not owe to him the duty to keep its station-house in a safe and secure condition. Its negligence, if any, was necessarily negligence of omission, negligence in having omitted the exercise of ordinary care to ascertain the dangerous character of the building. If the question was between the company and its employes, whose duty it was to occupy the building, or if it arose between the company and those who came to take passage on its cars, or to accompany a friend about to depart, or to await the arrival of one expected, or to engage in any business connected with the operation of the road, or business with those engaged in its service and having a legal right to be and remain there; or, if the company had possessed knowledge, in fact, of the dangerous character or condition of the building, and gave no notice thereof to those it permitted to enter or occupy, other considerations would arise. It, however, is not charged with intentional wrong, nor with that gross or reckless misconduct that is difficult to distinguish from it, and therefore is equivalent to it. All it could have done, when the storm approached, to save the deceased from harm, was to see that he left the building, and thereby escaped the danger. This was not a legal duty. He was injured by no act of the company, or its servants or agents, occurring at the time. The fault was

of past origin, and negative in character, consisting in not previously overhauling the building, ascertaining its defects and weakness, and supplying the needed strength and support. For this omission, or its resulting consequences, a stranger has no right to call it to account.

Judgment of the district court and of the common pleas reversed, and cause remanded.