No. 8212.

LARY *v.* THE CLEVELAND, COLUMBUS, CINCINNATI AND INDIANAPOLIS RAILROAD COMPANY.

NEGLIGENCE.—*Railroad Company.*—*Damages.*—The plaintiff, without invitation, and as a mere intruder, entered upon the uninclosed premises of the defendant, upon which was a building of the defendant in a state of visible decay. While there a sudden storm blew a fragment of the dilapidated building against the plaintiff, injuring him severely. The building had once been used as a freight house, but had been long since abandoned as a place of public business, and was not so situated, with reference to any public way, as to endanger travellers thereon.

*Held,* in an action for damages for the injuries received, that the plaintiff could not recover.

From the Madison Circuit Court.

*W. A. Kittinger, A. F. Harrison* and *W. R. Pierse,* for appellant.

*A. C. Harris, H. H. Poppleton, J. A. Harrison* and *R. Lake,* for appellee.

MORRIS, C.—The appellant sued the appellee for damages alleged to have been sustained by him through the negligent failure of the appellee to repair a building standing on its

ground and formerly used by it as a freight house, situate within the limits of the city of Anderson, Madison county, Indiana.

The appellee answered the complaint by a general denial. The cause was submitted to a jury for trial. The appellant having introduced his evidence to a jury, the appellee demurred to it and the appellant joined in demurrer. The court sustained the demurrer, and the appellant excepted.

The ruling of the court upon the demurrer is assigned as error.

The facts which the evidence proved, or tended to prove, are substantially as follows:

The appellee, called in the evidence the "Bee Line," on the 3d of April, 1878, owned and operated a railroad, passing through the town of Anderson, Madison county, Indiana. In the south-east part of said town it crosses the "Pan Handle" railroad, the course of the appellee's road being nearly east and west, and that of the Pan Handle from north-west to south-east. On the west side of the Pan Handle tracks, and north of the Bee Line tracks, there was a passenger depot. A freight house had been built, several years ago, about twenty feet west of the passenger depot, with a platform on the south side and west end of the same. The surface of the earth on which the freight depot stood inclined to the north; the house and platform rested on stone pillars. Next to the track, the platform and floor were some two feet above the level of the track, and on the further side, some seven or eight feet above the surface of the ground. The space between the platform and floor and the earth was open. A year or two before the alleged accident, the appellee moved its general freight business to a depot nearer the city, and the freight house in question was no longer used as the general freight house of the appellee, though still used for some purposes, such as storing the appellee's wood and lumber. A highway or avenue led from the crossing northwardly to the town, dividing the angle formed by the railroads. The appellee owned half an acre of

ground between its track and this highway or avenue, upon which the depot stood.

Patrick Lary, the father of the appellant, lived near the Bee Line tracks, and some distance west of the crossing. At a point up the avenue from the crossing, a road leads west toward his home. A heading factory stood some distance southeast of the crossing. The appellant, then twenty years of age, was, on the 3d day of April, 1878, employed in this factory as a "joiner," and had been employed in it as a common laborer for some time before. On the 3d of April, 1878, it rained, so that the factory shut down by ten or eleven o'clock in the forenoon. The appellant, in company with several other boys, started for home, and when they reached the crossing they walked along the Bee Line tracks until they reached the old freight house. The appellant had been in the habit of passing this freight house almost daily for some time. He noticed, in July, 1877, that a part of the roof of the building was off, but had never given it further notice. As the appellant and his companions came up the Bee Line track, they were throwing mud balls at each other. It was raining, and they ran under the platform of the freight house, where they continued their sport of throwing mud balls and pitching pennies. The appellant, to avoid the mud balls thrown at him by his companions, ran behind one of the stone pillars supporting the platform on the west end of the freight house. They had been playing some ten or fifteen minutes, when a severe and sudden blast of wind struck the freight house, while the appellant was behind the pillar. It tore off a piece of the roof of the building some ten feet square. The appellant, being frightened by the noise, ran out in the open space, and looking up saw the piece of the roof blown off, in the air. He ran toward the avenue, but before or as he reached the edge of it, this fragment of the roof fell upon and crushed him to the earth. The appellant was bruised and internally injured by the accident, and had not, at the time of the trial, entirely recovered from the injury.

Upon the facts thus stated, can the appellant maintain this action?

There is no testimony tending to show that the appellant was at the freight house by the invitation of the appellee, nor that he was there for the purpose of transacting any business with the appellee. The appellant intruded upon the premises of the appellee, and is not, therefore, entitled to that protection which one, expressly or by implication, invited into the house or place of business of another, is entitled to. The appellant was a trespasser, and as such he entered upon the appellee's premises, taking the risks of all the mere omissions of the appellee as to the condition of the grounds and buildings thus invaded without leave. We do not wish to be understood as holding or implying that if, on the part of the appellee, there had been any act done implying a willingness to inflict the injury upon the appellant, it would not be liable. But we think there is nothing in the evidence from which such an inference can be reasonably drawn. The building could be seen by all; its condition was open to the inspection of every one; it had been abandoned as a place for the transaction of public business; it was in a state of palpable and visible decay, and no one was authorized, impliedly or otherwise, to go into or under it. Under such circumstances, the law says to him who intrudes into such a place, that he must proceed at his own risk.

In the case of *The Pittsburgh, etc., R. W. Co.* v. *Bingham*, 29 Ohio St. 364, the question was: "Is a railroad company bound to exercise ordinary care and skill in the erection, structure, or maintenance of its station house or houses, as to persons who enter or are at the same, not on any business with the company or its agents, nor on any business connected with the operation of its road; but are there without objection by the company, and therefore by its mere sufferance or permission?" The court answered this question in the negative.

In the case of *Hounsell* v. *Smyth*, 7 C. B. N. S. 731, the

Lary *v.* The Cleveland, Columbus, Cincinnati and Indianapolis R. R. Co.

plaintiff fell into a quarry, left open and unguarded on the unenclosed lands of the defendant, over which the public were permitted to travel; it was held that the owner was under no legal obligation to fence or guard the excavation unless it was so near the public road as to render travel thereon dangerous. That the person so travelling over such waste lands must take the permission with its concomitant conditions, and, it may be, perils. *Hardcastle* v. *The South Yorkshire R. W. Co.*, 4 H. & N. 67; *Sweeny* v. *Old Colony, etc., R. R. Co.*, 10 Allen, 368; *Knight* v. *Abert*, 6 Barr, 472.

After reviewing the above and other cases, Judge BOYNTON, in the case of *The Pittsburgh, etc., R. W. Co.* v. *Bingham*, *supra*, says:

"The principle underlying the cases above cited recognizes the right of the owner of real property to the exclusive use and enjoyment of the same without liability to others for injuries occasioned by its unsafe condition, where the person receiving the injury was not in or near the place of danger by lawful right; and where such owner assumed no responsibility for his safety by inviting him there, without giving him notice of the existence or imminence of the peril to be avoided."

In the case from which we have quoted, the intestate of the plaintiff was at the defendant's station house, not on any business with it, but merely to pass away his time, when, by a severe and sudden blast of wind, a portion of the roof of the station house was blown off. the building and against the intestate, with such force as to kill him. The case, in its circumstances, was not unlike the one before us. *Nicholson* v. *Erie R. W. Co.*, 41 N. Y. 525; *Murray* v. *McLean*, 57 Ill. 378; *Durham* v. *Musselman*, 2 Blackf. 96 (18 Am. Dec. 133).

In the case of *Sweeny* v. *Old Colony, etc., R. R. Co.*, 10 Allen, 368, the court say:

"A licensee, who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, can not recover damages for injuries caused by obstructions or pitfalls. He goes

there at his own risk, and enjoys the license subject to its concomitant perils." *Carleton* v. *Franconia Iron and Steel Co.*, 99 Mass. 216; *Harris* v. *Stevens*, 31 Vt. 79, 90; *Wood* v. *Leadbitter*, 13 M. & W. 838. .

The evidence in this case brings it, we think, within the principles settled by the above cases.

The appellant contends that the evidence shows that the appellee was guilty of gross negligence in not repairing its freight house, and that such negligence renders it liable, though he entered upon its premises without invitation or license, as a mere intruder, and was, while such intruder, injured; and, in support of this proposition, we are referred to the following cases: *Lafayette, etc., R. R. Co.* v. *Adams*, 26 Ind. 76; *Indianapolis, etc., R. R. Co.* v. *McClure*, 26 Ind. 370; *Gray* v. *Harris*, 107 Mass. 492; *Isabel* v. *Hannibal, etc., R. R. Co.*, 60 Mo. 475.

In the first of the above cases, the court held, that, where the negligence of the company was so gross as to imply a disregard of consequences or a willingness to inflict the injury, it was liable, though the party injured was not free from fault. In the second case, it was held that a railroad company, not required to fence its road, would not be liable for animals killed on its road, unless guilty of gross negligence. The phrase "gross negligence," as used in these cases, means something more than the mere omission of duty; it meant, as shown by the evidence in the cases, reckless and aggressive conduct on the part of the company's servants. "Something more than negligence, however gross, must be shown, to enable a party to recover for an injury, when he has been guilty of contributory negligence." *The Pennsylvania Co.* v. *Sinclair*, 62 Ind. 301. There was, in the cases referred to in 26 Ind., something more than negligence. As in the case of *The Indianapolis, etc., R. W. Co.* v. *McBrown*, 46 Ind. 229, where the animal was driven through a deep cut, eighty rods long, into and upon a trestle work of the company, there was aggressive malfeasance. In the Massachusetts case, the court

held that a party building a dam across a stream must pro-vide against unusual floods. We do not think these cases ap-plicable to the one before us.

There could be no negligence on the part of the appellee, of which the appellant can be heard to complain, unless, at the time he received the injury, the appellee was under some obligation or duty to him to repair its freight house. "Ac-tionable negligence exists only where the one whose act causes or occasions the injury owes to the injured person a duty, cre-ated either by contract or by operation of law, which he has failed to discharge." *Pittsburgh, etc., R. W. Co.* v. *Bingham,* *supra. Burdeck* v. *Cheadle,* 26 Ohio St. 393; *Town of Salem* v. *Goller,* 76 Ind. 291. We have shown that the appellee owed the appellant no such duty.

The judgment below should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be affirmed, at the costs of the ap-pellant.