Spear, J.
It is not contended that the charge to the jury regarding the weight of the evidence was a correct instruction, but the claim of the defendant in error is, that under no charge that could have been given would the plaintiff have been entitled to a verdict.
This condition of the record makes it incumbent on this court either to reverse the judgments below and remand the cause for a new trial, or to examine the evidence in order to determine whether, upon plaintiff’s own showing, the right judgment was not rendered. The circuit court took the latter course, and the authority of this court to do likewise is not doubted. If, taking the evidence of plaintiff as *93 true, a right of recovery, under the pleadings, had been established, then the plaintiff in error is entitled to a judgment of reversal, while, on the other hand, if plaintiff had failed to make a case, by the pleadings and proof, entitling him, in the most favorable view, to a verdict, then the charge to the jury was immaterial, and the judgments should be affirmed.
The important facts appearing are as follows: The water-pipes had been placed under the surface of Center street, one of the public streets of the municipality, by virtue of what is-termed “a license, privilege and grant from the town of Springfield,” to plaintiff’s predecessor in title, for the purpose of conveying water fr.oni a spring owned by him, and located within twenty feet of the west margin of Center street, to a manufactory on the same street owned by him. The pipes had been in place as they were when taken up by the city, for more than twenty-one years. The water thus conveyed to the factory was valuable, and the destruction of the pipes, and the cutting off of the water proved a serious damage to the plaintiff in the running of the factory.
Whether the plaintiff was the owner of the lot on which the spring was located, or so much only as supported the spring, with the right from the lot owner to maintain the pipes to the line of the street, did not clearly appear, but, for the purposes of the case, he may be treated as an abutting owner.
The city had been laid off into sewer districts before the commencement by council of the proceeding to construct the sewer, and a general system of sewerage and plans and specifications therefor, had been prepared by experts and adopted according to law, and this sewer was one of those provided for in the general system. It was admitted that the city authorities had taken all proper and necessary steps to authorize the building of this sewer, excepting that at the time of passing the ordinance and of entering into the contract for the building of the sewer, the city did not have the money in the treasury to pay the cost, and that all the money for the payment of the cost, the city proposed to raise, and did raise by loan, under an act that was uncousti- *94 tutional. The pipes were taken up by the city with care, after notice to the plaintiff, at the commencement of the work of excavating for the sewer, and the spring was destroyed by the cutting off of a portion of the water which supplied it by excavating the trench in which the sewer was built, the trench being lower than the spring. The walls of the sewer were not made water tight, and the water of the spring, and water from sources which had supplied the spring, were carried off in part under the walls of the sewer, and in part by seeping through the walls into the sewer. It did not appear that the spring was supplied other than by water percolating through the earth.
No charge is made that sewage flowed out from the sewer, working injury. It is because water flowed into it that complaint is made.
Plaintiff’s claim for damages naturally divides itself into two branches. The first is for destruction of his water pipes and the interruption of the flow of water to the factory. This claim rests upon the proposition, averred as a fact in in the petition, and argued in the brief, that a right by prescription had been acquired by the occupancy by plaintiff and his predecessors in title of the privilege of maintaining the pipes in the street for more than twenty-one years.
To thus acquire an easement the enjoyment of the privilege must have been under an adverse claim of right against the city, since no length of enjoyment by permission can ripen into an easement. 2 Washburn on Real Property, §88; Morse v. Williams, 62 Me. 445; Colvin v. Burnett, 17 Wend. 569; Luce v. Carley, 24 Wend. 451. It must also have been an open and notorious possession. The facts of adverse enjoyment, and open and notorious possession, are not, we think, shown by the evidence. The occupation was under the surface. It is presumed to have been known to the municipality because of the giving of the license, though not so as to the public. The use was not apparent, and could hot, in its nature, be notorious, as regards the public. Neither was it, in its nature, adverse, inasmuch as it did not interfere with the uses of the street, either by the municipality or the general public, until the needs for a sewer *95 arose, nor did it, in any waj*-, work inconvenience to either. See Lane v. Kennedy, 13 Ohio St. 42. Indeed the averment that the owners “have had the license, privilege and right under a grant of the said city of Springfield,” etc., etc., would appear to be inconsistent with holding under an adverse claim of right, as we will endeavor to show later on.
As: to the grant the further averment is that “in the month of December, A. D. 1848, the said city of Springfield (then a town), by proper grant through the municipal authorities of said city, and on a good and valuable consideration, gave to J. W. and Wm. A. Kills, then the owners of the premises now owned by the plaintiff, and then the owners of the real estate and the spring situate thereon aforesaid, the privilege, license and right to lay pipes from said spring to said Center street, thence beneath the surface of said street to the premises then owned by said J. W. and Wm. A. Kills, and now by the plaintiff and the said J. W. and Wm. A. Kills, on or about, the month of May, 1849, in execution of said grant, and in pursuance of the same, and the license and privilege aforesaid, at great'* cost' and expense, procured and laid pipes from said real estate, and said spring, to said Center street, thence under the - surface thereof, on the west side of the same, north to the premises now owned by plaintiff, and for-the purpose of conducting' water from said spring to said premises for the use of the same in connection with manufacturing and other legitimate purposes, and.- the' said pipes have been maintained as thus laid down by said J. W. and Wm. A. Kills and those holding under them, and renewed from time to time from the date last aforesaid, up to the present, and especially to the time of the commission of the wrongs and injuries herein complained of. And during all such time, with the exceptions hereinafter named, the said J. W. and'Wm. A. Kills, and those purchasing and owning the real estate, -now owned by plaintiff, including said spring and the real eétate on which it is situated, have had and exercised the right to conduct the water through such 'pipes thus located, and use • the same as aforesaid.’
Plaintiff has succeeded, by mesne conveyances, to all the *96 rights of the Kills save only as regards an unimportant privilege reserved by one Steele.
This brings us to the question of the effect in law of the grant by the town of Springfield. Its exact terms do not appear, though, probably this is not important, for the question, independent of form, is, could the council of the town make a grant of an easement in a public street which would interfere with the legitimate use of the street, by the municipality itself? This is to be determined by a consideration of the power of the corporation over the street', and its duty with respect to the street, growing out of its relations to the public.
For the purposes of this case, it is probably not of consequence whether, as to Center street, the naked fee is in the city or in the owners of the abutting lots. However, it is averred and not denied, that the town acquired its rights to the street by dedication. Therefore, under section 2601, Revised Statutes, the fee is in the municipality in trust, however, for public uses, to-wit: for all the uses of a street, subject, of course, to the property rights in the street of the abutting lot owners.
The laying of sewers, like that of gas and water pipes beneath the soil, and the erection of lamps and hitching-posts, etc., upon the surface, is a street use, sanctioned as such by their obvious purpose, and long continued usage, and that such is one of the legitimate uses to which a street may be devoted is distinctly held by this court in Cincinnati v. Penny, 21 Ohio St. 499. For such purpose, it would seem that the right of the municipality in the street could not be inferior to the right of a private owner over his own land. If the title comes by appropriation, all right to damages by reason of the acquisition of the land for street uses, in favor of abutting owners, must be held to have been taken into the account and compensation therefor awarded in the original taking, and, if by dedication, the same result would follow as an incident of the grant. That a city’s power over its streets for legitimate street purposes, is as great as that of a private individual over his own land, is recognized in Nevins v. Peoria, 41 Ill. 502; Dixon v. Baker, 65 Ill. 518; *97 Yearney v. Smith, 86 Ill. 391, and appears to be sustained by-sufficient reason. It necessarily follows that for all such public uses the right of the municipality is paramount to any property right of the abutting owner in the street. Dillon on Munic. Corp., section 656.
The municipality is given the exclusive care, supervision and control of the streets. Hand in hand with this power goes a corresponding duty to keep them open, in repair, and free from nuisance. This implies a duty to see that the right of the public therein is not encroached upon. An encroachment which would prevent the reasonable use of the street by the municipality would be a nuisance, and power to validate such nuisance by a grant would be utterly inconsistent with the duty enjoined to keep the street free from nuisance.
As we have seen, the city as to its streets, is a trustee for the use of the public. A trustee of property for the benefit of the public could not, any more than could a trustee of private property held for known specific and continuing uses, alien or encumber the property to the prejudice of the beneficiary, and a purchaser dealing with the trustee, in either case, would be bound to take notice, at his peril, of the limitation of the power. 2 Dillon on Mun. Corp., section 671; Alton v. Trans. Co., 15 Ill. 60. Hence it would follow that whatever grant may have been made by the town of Springfield to the Kills, to maintain water-pipes in Center street, could have no greater operation than as a temporary license, subject to be revoked at the will of the town, or city, as its necessities in the future uses of the street might require. It necessarily results from this that the enjoyment of the street beneath the surface for the laying of the pipes and the flowing of the water through them was a permissive use, and that no permanent right could be acquired by long continuance.
Extended comment upon the subject is not necessary here, but we may remark in passing that it is difficult to perceive how title to an easement by prescription, as against a municipality, can result from occupancy for twenty-one years, even if it be open, notorious and adverse, for such *98 title rests upon the presumption of a grant. We do not propose questioning that a municipal corporation, as to its streets, may be affected by the statute of limitations, and if the plaintiff’s remedy could be worked out by the operation of the statute, of course, it would not be important to him as to the ground on which the court might put it. But while treating of the subject, it is somewhat desirable that right conclusions be reached, though, they may not be necessary to a determination of the case. We have already seen that there is no power in the municipality to make a valid grant prejudicial to the interests of the public. And nothing seems better settled than that' a grant cannot be presumed unless it relates to that which one party could have granted to the other. Washburn on Easements, 150; Watkins v. Peck, 13 N. H. 360; Fishing Co. v. Carter, 61 Pa. St. 21; Chalker v. Dickinson, 1 Conn. 384. In Cincinnati v. Evans, 5 Ohio St. 594, the court says that “municipal corporations are subject to the operation of the statute of limitations, in the same manner, and to the same extent, as natural persons.” An examination of the charge of the trial court, which was under’'review in that case, and was distinctly approved, discloses that the learned judge gave effect to the statute of limitations, not as having vested in the occupant a title by prescription, but upon the ground that municipal corporations have the right, from necessity, to establish the lines of their own possessions, and when once established, they are bound by them, which was entirely justified by the fact that Evans’ building had been located by the city surveyor, and upon lines previously established and built upon. Pecic, J., in Lane v. Kennedy, supra, commenting upon Cincinnati v. Evans, observes that the case was “rightly determined, but, as will be seen by a reference to the facts therein stated, it might with equal, if not greater propriety, have been placed upon the ground of an estoppel in pais on the part of the city authorities.” This is a recognition of the later, and apparently, the more generally accepted doctrine out-side of our own state, of the application of the rule of equitable estoppel in pais, rather than the statutory rule óf the statute of limitations. 2 Dillon, § 675. *99 The doctrine of equitable estoppel has no place in the case we are considering. The language of this court, above quoted, from Cincinnati v. Evans, means, we suppose, simply that the-city’s claim could not be maintained, because the law-making power had seen fit to provide that an action for the recovery of the possession, etc., of lands, etc., can only be brought within twenty-one years after the cause of action shall have accrued.
Plaintiffs second ground of complaint is the cutting off of water which before had supplied the spring, and the destruction of the spring by draining it. It is not charged that this supply came from plaintiff’s lands. The inference is that it came by percolation through the earth in the vicinity of the spring. It is averred that the damage arose from the negligent construction of the sewer, and that, being unlawful because done in violation of the terms of the statute requiring that the money to pay the cost shall be in the chy treasury, and under an unconstitutional act intended to afford a way to raise the necessary money by issuing bonds, a right of action accrued to plaintiff for his damages. This claim must rest upon the proposition that plaintiff had a legal right to the use of the water percolating through the earth, and a like right to have maintained intact, the water of the spring itself. It is not insisted that the claim to the water was the subject of grant. Could the enjoyment by plaintiff and his predecessors in title for more than twenty-one years give such right?
The ownership of underground waters has been a prolific subject of discussion, and much difference of opinion has developed among text writers and judges. We are concerned only as to percolating waters. Upon this branch, the law, at least in Ohio, is settled to the effect that no right ex-' ists in the owner of one piece of land to receive percolation through the land of another, and that such a right cannot be acquired by prescription. The same rule must apply to a spring supplied by percolating waters. That is, an owner of land cannot, in the absence of grant or contract, deny to his neighbor the right to use his own land for legitimate purposes, though the direct effect be to drain the former’s spring, and it *100 is not of consequence bow long tlie spring has been enjoyed. We regard these questions as entirely covered by the case of Frazier v. Brown, 12 Ohio St. 294, and the authorities there cited, and discussion of them here would be superfluous. From these rules it results that in water percolating through the earth under Center street, or under the surface of lands of others in the vicinity of the spring, the plaintiff had no ownership, nor had he a right to insist that they should flow as they had theretofore flowed. It follows that unless the case is affected by the fact, that at the time the contract was let the city did not have in the treasury money to pay the cost of construction, or by the attempt to act under a void statute in the raising of money, or by the charge of negligence in the construction of the sewer, there can be no right of recovery.
The legality or illegality of the city’s acts depends upon the construction of section 2702, Revised Statutes. This provides that no contract involving the expenditure of money shall be entered into, or ordinance for the appropriation of money passed, unless the clerk shall certify that the money required for the contract is in the treasury to the credit of fund, etc. We think the object and purpose of this section is apparent on its face in view of the mischief theretofore existing. Before its passage there was no adequate check upon municipal extravagance in the making of improvements, and the incurring of municipal debt. This act put a barrier in the way, and thus afforded some protection to the taxpayer. To give it such construction as to defeat that purpose, and bring about the opposite result, would be to ignore the main guide in the construction of statutes, viz: the intent of the law makers. Had the plaintiff, in due time, brought action as a citizen taxpayer to enjoin the work of building the sewer, no reason is perceived why the result desired might not have been reached. And if a violation of section 2702 did not create liability for negligence, certainly, as it seems to us, the fact that the city was proceeding to raise the money by an unconstitutional act of the legislature, could not have that effect. It was a mere incident. So long as the general power to devote the street *101 to sewer purposes existed, the method of raising the money to pay the cost, while it might have been enjoined and thus prevented, could not create liability for negligence where none otherwise attached to the acts of the city. The general rule, that any person has a right to question the validity of a law whenever he is injuriously affected by its execution, is not denied, but it can have no application to the case at bar for the reason that it was the execution of the laws which gave to the city the general power to construct the sewer in Center street, which produced the damages of which plaintiff complains, and not that under whjch the city was endeavoring to raise money. So far as plaintiff’s complaint is concerned, therefore, the city was not proceeding illegally.
How is the case affected by the charge of negligence? Negligence, we suppose, necessarily implies a legal duty to use care. That is, the complainant must show that he had a legal right to demand care, and this, too, as to the particular matter complained of. Where there is no obligation of care or caution, there can be no actionable negligence. Railway v. Bingham, 29 Ohio St. 364. It has been well-said, that “negligence is not absolute nor intrinsic, but always relative to some circumstance of time, place, or person.” Needham v. Railroad, 37, Cal. 410. It would be immaterial, therefore, in this case, that the sewer was so faultily constructed as to admit of the outflow of sewage, to the damage of adjoining property, as that is not the damage complained of. We have already seen that the plaintiff had no right in the percolating waters cut off by the construction of the sewer, nor a right to have maintained intact the water of the spring. Consequently, he could not demand the exercise of care to protect those waters. The charge of negligence, therefore, so far as the same might affect them, whether as regards the flow of water into and through the sewer and trench, or the effect of blasting of rocks in the excavation for the sewer upon the waters in the earth of Center street, or in the lands of others in the vicinity of the spring, if proven, could not create liability against the city.
Attention is directed to Trowbridge v. Brookline, 144 *102 Mass 139, where it was held that a town, which, under the Massachusetts statute, condemned land and constructed a sewer, whereby a well upon land not taken was made dry, the well being fed by water percolating through the soil, was liable to the owner of the well. The decision is distinctly placed, upon the provisions of the condemnation statute, which provides that compensation shall be made for damages sustained by any person, whether by taking his property, or injuring it in any manner, and is, upon the face of the statement, not authority in the case at bar.
We agree with the conclusion of the circuit court, that the charge given, and the refusals to charge, were alike immaterial, because no ground for recovery had been shown, and as a judgment will not be reversed for errror in the charge to the jury, where, upon the most favorable construction of the evidence, the complaining party had shown no right of recovery, the judgments below should be affirmed.

fiidgment accordingly.