Manseield, J.
This was an action to recover damages for death of plaintiff’s decedent, an infant about twelve years of age, on account of the alleged negligence of the defendant, the Erie Railroad Company.
The cause was submitted to a jury and the jury having returned a verdict in favor of the plaintiff in the sum of $1,500, the matter is now for hearing on the motion of defendant for a new trial. - .
*293 At the time the ease was submitted to the jury, the court was somewhat in doubt as to whether, conceding all the facts to be true, that they were sufficient in law to fasten liability upon the defendant. But the court submitted the case to the jury, reserving the right to further dispose of the question involved by the motion of defendant to direct a verdict at the conclusion of all the testimony or order a non-suit.
The facts briefly stated are about as follows:
Plaintiff’s decedent was a minor about twelve years of age; he was a newsboy, and with another newsboy, on the date of the accident, went to Hunt’s news stand in this city, to secure their usual allotment of papers which they expected on a Shelby car then about due.
The car being late, as young Terman claims, they went to the Baltimore & Ohio Railway depot to meet the car which crossed the railroad tracks at that point; while there the plaintiff went upon the platform and was ordered by the agent of the railroad company to get away from the platform for fear they might get hurt; they then proceeded to go across Mulberry street and thence down on the track and right-of-way of the Erie Railroad Company. Young Terman says that it was their intention to go to Main street, which lies east of Mulberry street, but for what purpose it is not disclosed by the testimony. Anyhow, they did not go to Main street, but, after being along the right-of-way of the Erie Railroad Company, which crosses Mulberry street, almost parallel with the Baltimore & Ohio Railway track at that point, the boys hearing the train whistle, started to run west from their present location, crossing over the Erie Railroad track, as young Terman says, to reach the Baltimore & Ohio depot, to watch passengers get off the train which they thought was coming on the Baltimore & Ohio track, and while going over the tracks of the Erie Railroad Company east of Mulberry street, plaintiff’s decedent, the Carter boy, was run over and killed.
It is alleged in the petition of plaintiff that as the Erie Railroad train was going along said track and for a long distance east of the point from where the accident occurred, the agents and servants in charge of its locomotive failed to sound the whistle *294 or ring the bell or give other warning of the approach of said train to plaintiff’s decedent or others, who were using said right-of-way as foot pedestrians, and-that their failure to give such-warning was negligence upon the part of the company, as plaintiff’s decedent was in the exercise of due care for his own safety, and that by reason of the alleged negligence of defendant plaintiff’s decedent was run over and killed.
It is alleged in the answer that -plaintiff’s decedent and the Terman boy went upon said right-of-way of the defendant for the purpose of playing, and it is further alleged in the answer that at the time of the accident the engineer and servants in charge of said railroad locomotive of defendant, did not see the boy at and prior to the time that he was injured.
The right-of-way of the Erie Railway extends from Main street south of the property of the Aultman & Taylor Machinery Company’s land in a westerly direction to Mulberry street, going thence westerly along the north side of the Baltimore & Ohio Railroad station. About midway between Union depot and the Baltimore & Ohio depot, Main street crosses the tracks of the Erie Railroad Company, and about midway between Main street and Mulberry street in that locality, the Baltimore & Ohio Railroad Company coming in from the north crosses the tracks- of the Erie Railroad Company and after crossing to the west run practically parallel to the Erie Railroad Company in easterly direction on the south side of the Baltimore & Ohio station. A short distance east of this junction of the Baltimore & Ohio and Erie tracks, the Baltimore & Ohio freight track crosses the Erie tracks at almost right angles, then proceeds in a southerly direction to its freight depot located south of Sixth street. Between Mulberry street and Main street along and- adjacent to the main tracks of the Erie and the Baltimore & Ohio Railroad company are numerous other side-tracks and switches, and these extend in an easterly and westerly direction for the .accommodation of their business between Main street and Mulberry street. And this right-of-way between Mulberry street -and Main street has been used and was used up and until the time of this accident by the public in general as a convenient way in going to and from points east and west of Mulberry street and Main street, and *295 that this use had continued uninterruptedly for a period of about twenty-five or thirty years; however, it appears that the railroad company had a sign posted on its right-of-way just as you enter it from Mulberry street, notifying persons not to trespass upon its property.
And this was the situation; all these facts and circumstances as heretofore detailed as appears by the testimony that existed at the time of the accident to plaintiff’s decedent. It appears by the testimony further that the whistle on the engine was blown at a point considerably east of the junction of the Erie and the Baltimore & Ohio tracks, at exactly what point does not appear clearly by the proof, but that no further or other signals were given by the servants of the company up to the time of the accident.
Taking this state .of facts, and they aré substantially as above set forth, the question arises under .the law of Ohio, whether any liability can attach to the defendant for the deplorable accident that happened to plaintiff’s decedent.
To determine this question inquiry must first be had as to what duty, if any, the defendant company owed to plaintiff’s decedent at and prior to the time of the accident, for, if there was no duty under the circumstances owing by the defendant to plaintiff’s decedent, then there can be no recovery.
In the case of Erie Ry. Co. v. McCormick, 69 Ohio St., 45, the first division of the syllabus lays down the rule:
‘ ‘ The omission of a duty is not the foundation of .an action Unless it results in injury to one for whose protection the duty is imposed. ’ ’
A railroad company is bound to exercise reasonable care for the protection of those to whom it owes a duty, and the question now arises, this accident having occurred on the right-of-way of the defendant company other than at a public crossing, and the children having been on that right-of-way for the purpose of playing and not on any business connected with the company itself, or in which any mutual interests'were involved between the business of plaintiff’s decedent and that of the company, whether a duty was imposed upon the railroad company such as *296 would require it to keep a vigilant lookout for persons in the situation of plaintiff’s decedent, and give warnings and signals of the approach of its trains along the track just prior to the time of the accident.
In the case of W. & L. E. Ry. v. Harvey, 77 Ohio St., 235, the court says in the first division of the syllabus:
“It is not the duty of an occupier of land to exercise care to make it safe for infant children who come upon it without invitation but merely by sufferance. ’ ’
Second. “A railroad company is not liable to an infant who comes upon its premises without invitation and who is injured there while playing, without its knowledge; with a turn-table. The doctrine of the turn-table cases is disapproved. Harriman v. Railway, 45 Ohio St., 11, distinguished.”
In the opinion of the court on p. 240, Judge Summers lays down three propositions:
‘ ‘ The duty of the owner or occupier of land to persons coming upon it, depends somewhat upon whether they were there by his invitation or permission.”
Second. ‘ ‘ To invited persons it is his duty to exercise reasonable care for their safety. ’ ’
Third. “To licensees it is his duty to give notice of hidden dangers or traps, while trespassers, that is, persons entering without permission, assume the risk of injury from the condition of the premises, and the duty of the occupier to them is only to lie careful not to injure them by bringing force to bear upon them, that is, they would be liable only for gross negligence. ’ ’
In the case of P., Ft. W. & C. Ry. v. Bingham, 29 Ohio St., p. 364, the court says:
“A railroad company is not liable for an injury to a person resulting from its failure to exercise ordinary skill and care in the erection or maintenance of its station house, where, at the time of receiving the injury, such person was at such station house by mere permission and sufferance, and not for the purpose of transacting any business with the company or its agents or on any business connected with the operation of the road. ’ ’
In the ease of C., H. & D. Ry. v. Aller, 64 Ohio St., 183, we find the following syllabus, p. 183:
*297 "A railway company having constructed its station and a platform incident thereto, does not, by permitting persons to use such platform for purposes .of their own not connected with the transaction of business at such station, become charged with a duty to re-construct, guard or light such platform so as to render it safe for the permitted use. P., Ft. W. & C. Ry. v. Bingham, 29 Ohio St., 364, approved and followed; Harriman v. Railway, 45 Ohio St., 11, distinguished.”
In the opinion of the court in this case, Judge Shauek says:
"The station house with its appropriate rooms and the platforms were obviously adapted to the use of the two roads in the interchange of traffic. They were so used. Passengers desiring to transfer from one road to the other were therefore invited to use them for that purpose. And this invitation implied an undertaking that the platforms were reasonably safe for that purpose. .It follows that if the plaintiff had received his injuries while making his way with reasonable care to the ticket office or waiting room, his right to recover would be entirely clear. But he entered upon the platform with an intention previously formed not to use it for that purpose. Pursuing that intention he set out to use the platform and the track of the company as a way to reach the village, a half mile distant, and having knowingly passed the ticket office and waiting rooms, where employes would have provided him with a ticket and with information of the movement of trains, if he was not already informed, he had reached a point somewhat more than two hundred feet from the office when he received his injuries. The duties which the company owed him were such only as arose out of the relation to it which he had thus voluntarily assumed.
"It is said that the frequency with which the platform and track were used by a footman as a way to pass from the vicinity of the junction to the village and the long continuance of that use, raise a presumption that those who represented the company in charge of its ground, had knowledge of the use and that from acquiescence with knowledge, permission may be inferred.
"If this is conceded it will serve no fur.ther purpose than to place the plaintiff in the position of one so using the platform and grounds of the company by permission. But, there is no ground for the contention, that the company had invited the plaintiff and others to use the platform and track for the purpose which he had in view. It is quite true that the invitation to go upon the platform of a railway company is usually implied from the community of interest, that is, the interest of the traveler in being *298 transported and of the carrier in transporting him. Here, however, there was no community of interest. It is conceivable that the condition of the ways and commons gave to footmen an interest in sp using the platform and track, but that the company was interested in having them so used is inconceivable.”
Now then ref erring, again to W. & L. E. Ry. v. Harvey, supra, and disposing of the case of Harriman v. Railway, supra, as has been urged as a reason for submission of the case at bar, to the jury, we quote the following:
‘ ‘ In the case of Harriman v. Railway Company, it was not necessary to a determination of the question presented to determine whether the boy was on the railroad company’s property by implied invitation or by license. It may be, as intimated in the opinion, that the conduct of the company estopped it to deny liability, or to assert that the boy was a trespasser; but it was not necessary to go further, for in either case it was the duty of the company not to interpose a trap or pit fall, or a new danger with out notice or the exercise of due care. Upon this ground the judgment in that case may be vindicated, but we are not satisfied that what is there said upon the subject of invitation and license can be. ”
In the case of Bellefontaine & Ind. Ry. v. Snyder, 18 Ohio St., p. 399, the court say:
“It is the duty of persons in charge of cars passing along streets or other frequented places to exercise great caution; and if, by failure to do so, a child of tender years is injured, the company represented is liable in an action by the child” for the injury sustained.
In the Snyder case, supra, the plaintiff with other children were in the habit daily of using the tracks of the defendant to cross and recross on their way to and from school and, upon the occasion of the injury, the children were using the tracks for such purposes, and this .use was continuous and for such length of time so open and notorious as to this particular use that the railroad company had actual knowledge of such use made by the children of the village in going to and from school, and the court' without specifically announcing the doctrine as such held in substance that the children in such use were upon the tracks of *299 the company by its implied invitation, and were chargeable with the exercise of ordinary, reasonable care for their protection, that it was negligence on the part of the company to fail to sound its whistle or ring the bell or provide other warning to children whom defendant might reasonably apprehend were upon its tracks at about that time for such purpose.
And the rule thus laid down in the Snyder case, supra, is the law of Ohio, and in principle is applicable to any state of facts coming within the doctrine there announced.
And inquiry must be made whether the ease at bar comes within the rule laid down. • .
Judge Summers in W. & L. E. Ry. v. Harvey, supra, on p. 259, in discussing the propositions of express and implied invitation upon the land of the owner or occupier quotes Sturgis v. Railway, 72 Mich., 619, as follows:
“It is impracticable to keep off trespassers from an open track and all who go upon it do so at their own risk of such dangers as are incident directly to such use. ’ ’
And from Hargreaves v. Deacon, 25 Mich., 1:
“Cases are quite numerous in which the same questions have arisen as in this case, and we have found none which hold that an accident from negligence, on private premises, can be made the ground of damages unless the party injured has been induced -to come by personal invitation, or by employment which brings him there, or by resorting there as to a place of business, of of general resort held out as open to customers or others whose lawful occasions may lead them to visit there. ■ °
“We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way .connected with business or other relations with the occupant. ’ ’
And further quoting from Ryan v. Towar, 128 Mich., 463:
“An invitation or a license to.cross the premises of another can not be predicated on the mere fact that no steps have been taken to interfere with such practice.” And that: “There is no difference between children and adults as to the circumstances that will warrant the inference of- an invitation or a license to enter upon another’s premises. ’ ’
*300 And again quoting from Turess v. Railway, 61 N. J. Law, 314, the court says :
‘ ‘ Invitation which creates such a relation may be express,' as when the owner or occupier of land by words invites another to come on it, or make use of it or something thereon, or it may be implied as when such owner or occupier, by acts or conduct, leads another to believe that the land or something thereon was intended to be used as he uses them, and that such use is not only acquiesced in by the owner or occupier, but is in accordance with the intention or design for which the way or place or thing was adapted and prepared or allowed to be used. ’ ’
And again quoting:
‘1 It will be observed that, in the case of an implied invitation, the relation is imposed upon the owner ‘or occupier of land only when he has done something which justifies one who enters upon the land and makes use of it or something upon it in believing that he intended such use to be made; and he who makes such use of it can claim the relation only when he is justified by the acts or conduct of the owner or occupier in believing that such use was intended. And entry and use by such invitation are thus distinguished from entry and use by mere permission.”
Reverting again to Bellefontaine & Ind. Ry. v. Snyder, swpra, the statement of facts shows that the railroad company knew that its right-of-way was used and had been used by the children of the village as a way to and from school, and that upon the occasion of the injury to the little Snyder girl who was using the right-of-way for such purpose, that is, was using it for the purpose of going to school with the full knowledge of the company and its acquiescence for. such use. So the facts in that case would bring it clearly within the rule last stated. But, it will be noticed in a glance that in the case at bar the use of the right-of-way was one by foot pedestrians between Springmill street and Main street as a matter of their own convenience, wholly disconnected with any use that plaintiff’s decedent was making of the premises at the time of her injury. It is questionable,- indeed, whether the use so made generally by the public, as will be hereafter noticed, was such as would amount to an implied invitation by such users, but was rather one of permission only. But in the case at bar it is alleged that plaintiff’s decedent went upon *301 the premises of defendant for the purpose of playing, and the evidence of the Terman boy and the circumstances all tend to show that fact beyond controversy, and that the were simply killing time and using the right-of-way to play upon. There is no evidence to show that the right-of-way was intended by the owner or occupier to be used for any such purpose nor that any notice or knowledge came to the defendant that it was to be so used.
In the case at bar plaintiff’s decedent, so far as the record shows did not know nor had he any knowledge that the right-of-way was being used by foot pedestrians as a matter of convenience or otherwise or that such was permissive so far as the defendant was concerned.
In the Snyder case, supra, the little girl injured was in the. habit of using the way for the particular purpose and the company had notice of its use for such purpose; in the case at bar the permitted use was not only different from that which impelled plaintiff’s decedent to come upon the premises, but the defendant had no knowledge that plaintiff’s decedent was there or the business or purpose of being there.
If an invitation is to be implied from a given state of facts it would only operate to protect those who act upon such invitation,, it would not operate to protect those who were absolute strangers to the invitation so conferred, nor would a permissive right conferred upon a class be enlarged to one of implied invitation and charge upon the owner or occupier of premises liability as such, unless such new use is not only acquiesced in by the owner or occupier, but is in accordance with the intention or design for which the way or place or thing was adapted and prepared or allowed to be used.
Reasoning then by deduction from these eases and admitting for the purpose of the proposition that the right-of-way of the Erie Railroad Company, for more than twenty-five or thirty years had been used to a large extent continuously by the public as a way for persons passing to and fro between said streets not in connection with any business of the railroad company, but as a mere matter of their own convenience, such use would not so far as the facts of this case are concerned establish that the persons using the same were there by invitation. They were there simply *302 by permission, that is, they were mere licensees, and it is very questionable indeed whether' these boys who were upon the right-of-way for the purpose of playing, as alleged in the petition, and as may be well inferred from the testimony of young Terman, who is the only living witness, as to their conduct upon that occasion, that their right to the- use of the right-of-way for the purpose that they were giving it would hardly be as strong as one who had been accustomed to use it for a long number of years for his own convenience without objection upon the part of the company. However that might be, the strongest position that-plaintiff’s decedent can be placed in, would be to say that he was there simply by permission and not by invitation. The cause of the accident was not one resulting from the usual operation- of the trains or of the construction of pit falls or hidden dangers, but so far as the testimony is concerned, the trains were being operated in the usual and ordinary manner, and beyond that there would be no duty upon the part of the railroad company to one who was simply upon the track by permission to give warnings and signals such as to apprise such users of the approach'of said train unless, at the time, the servants of the company knew of the presence of the boys in a place of danger, and with such knowledge failed to exercise ordinary care for their protection; but in this ease it is alleged in the petition and is admitted that the engineer did not see these boys. It appears that these boys were on the right-of-way apparently for the purpose of playing; it appeared that the train was being operated, at least there is no evidence to show but what it was being operated in the usual and ordinary manner.
It does not appear nor is it alleged that the accident resulted from any pit fall or hidden danger such as suggested in Harriman v. Railway, supra. So consequently it would not be negligence on the part of the railroad company to fail to give other warnings than that which it did give, and it simply resolves itself down to an unfortunate accident to which no liability can be fastened upon the railroad company. .
This being the view of the law the court has taken, after a very careful consideration of the authorities cited by counsel on both sides, there only remains one thing for this court to do, and which *303 it should have done at the conclusion of all the testimony, and what .the court reserved at that time, to enter a non-suit against the plaintiff and to enter judgment against the plaintiff for costs.