'THE INDIANAPOLIS, BLOOMINGTON, AND WESTERN R. W. CO.
*v.* McBROWN.

RAILROAD.—*Killing Animals.*—*Statute.*—It is essential to the liability of a
railroad company, under the acts of 1853 and 1863, for the death or injury of
an animal, that the animal should be actually touched by the engine, cars, or
other carriages.

SAME.—*Negligence at Common Law.*—*Wilful Negligence.*—Where the track
of a railroad passed through a cut eighty rods long, and a horse of the owner
of the land was near the track at the entrance of the cut, and the whistle
of an approaching engine was sounded, and the horse ran upon the track
and into the cut, whence it could not escape up the sides, and the engine
was run on and the whistle sounded, thereby continuing to frighten the horse
until it jumped into a trestle-work at the other end of the cut and was killed,
when the engine could have been stopped after the horse was in the cut and
before it jumped into the trestle-work;

*Held*, that the company was guilty of such negligence as rendered it liable at
common law for the value of the horse. The negligence in such case is wilful.

From the Fountain Circuit Court.

*J. C. Black*, *L. Nebeker*, and *S. M. Cambern*, for appellant.
*H. H. Stilwell*, *T. L. Stilwell*, and *L. P. Miller*, for appellee.

BUSKIRK, J.—The assignments of error call in question the
action of the court in overruling the demurrer to the amended
complaint and the motion for a new trial. The allegations
of the complaint were fully proved upon the trial. The ver-
dict of the jury was fully supported by the evidence. The
only question for our decision is, whether, upon the facts
averred in the complaint, the appellant is liable.

The amended or substituted complaint, omitting the for-
mal parts, is as follows:

" Elam S. McBrown, the above named plaintiff, complains of
the Indianapolis, Bloomington, and Western Railway Com-
pany, defendant herein, and says that on the 10th day of
April, 1872, the defendant was the owner of a line of rail-
road between Indianapolis, Indiana, and Peoria, in the State
of Illinois, passing through said county of Fountain and
across the lands of said plaintiff, and defendant is also the
owner of the engines and cars running on said railroad,

which at the date above mentioned was not fenced; and plaintiff's mare at said date was running at large on plaintiff's own unfenced lands, and then and there wandered upon the track of said defendants at a point at the west end of a cut, ranging from three to ten feet deep, and fifteen feet in width, and eighty rods long, made by defendant to construct their track in, and in which they constructed their said track; and while said mare was at the west end of said cut on said track as aforesaid, without any fault or negligence on the part of plaintiff, there came an engine drawing a tender, eastward bound, each belonging to the defendant and in their employ, managed by, and in the care and custody of, an engineer and fireman, each of whom was at the time in the employ and service of defendant; and that said engineer and fireman, on approaching near the point where said mare was standing, sounded the whistle on said engine and hallooed loudly, and by reason of the sounding of said whistle and said hallooing, said mare became greatly frightened and ran eastward along and on said track in said cut; and that said engineer and fireman continued to sound said whistle, and continued hallooing, and then and there carelessly and negligently failed to check said engine, which they could easily have done many times during the time, from the time said mare took fright and the time she was killed, as hereinafter set forth; and that said engineer and fireman then and there negligently and carelessly continued to sound said whistle and continued said hallooing, and thereby caused said mare to continue frightened while she ran on said track in said cut at her greatest speed, and could not then and there get out of said cut on either side, until arriving immediately at the east end of said cut, at which place there was a trestle-work over a drain, of the existence of which said engineer and fireman had full knowledge at the time; and that by reason of said engineer and fireman negligently and carelessly failing to check the speed of said engine, which they could easily have done as above stated, and also by reason of the continuation of the sounding of said whistle and said hallooing, thereby

caused said mare to run into said trestle-work, in which she then and there became entangled and fell, which fall caused her death.

"That said mare was of the value of one hundred and fifty dollars, for which amount plaintiff demands judgment, and other proper relief."

It is essential to the liability of a railroad company under the acts of 1853 and 1863, for the death or injury of an animal, that the injury should be direct; that is, that the animal should be actually touched by the engine, cars, or other carriages. The language of the first act is, "shall be killed or injured by the cars or locomotive, or other carriages." See 1 G. & H. 522. The language of the last act is "for stock killed or injured by the locomotives, cars, or other carriages of such company." 3 Ind. Stat. 413. It was held by this court in *The Peru, etc., R. R. Co.* v. *Hasket*, 10 Ind. 409, that the railway was not liable under the act of 1853, unless the animal was touched by the locomotive or some part of the train. The language of the act of 1863 is in substance the same as that of 1853, and the legislature is presumed to have passed it in view of the construction given to the act of 1853. See the cases collected in note 3, on page 416, 3 Ind. Stat. In the present case, the appellee's mare was not even touched by the locomotive or any part of the train, and consequently the appellant is not liable under the act of 1863.

We proceed to inquire whether the appellant is liable at common law. Was the appellant guilty of negligence? The track of the railroad ran through the lands of the appellee. The mare of the appellee, with seven other horses, was near the track. A locomotive and tender were passing over the track, going east. When the horses were discovered, the whistle was sounded, and the men on the engine hallooed. This action of the persons in charge of the engine was proper. The sounding of the whistle is the usual mode of frightening stock from the track of a railroad. The reasonable presumption was, that the horses would run away from the track, but instead, they ran on the track into the cut. The

employees of the appellant are chargeable with notice of the condition of the cut and the danger to the horses. It is averred that the horses could not escape from the cut on either side of the track, until arriving immediately at the east end thereof, at which place there was a trestle-work over a drain. With a knowledge of these facts, the engine should have been stopped, but the engine pursued the horses in the cut and continued to sound the whistle, which caused them to run at their highest speed, and the plaintiff's mare fell into the trestle-work and was killed. It is also averred that the engine could have been easily stopped after the appellee's mare was in the cut and before she fell into the trestle-work.

It is claimed by counsel for appellant that the dangerous character of the trestle-work is not sufficiently shown in the complaint. It alleges that a trestle-work was made over a drain at the east end of the cut. A trestle is defined by Webster as follows: " 3. In bridges, a frame consisting of two posts, with a head or cross beam and braces, on which rest the string-pieces." It seems to us that the averment that a trestle existed over a drain at the east end of the cut is sufficient to show that it was unsafe and dangerous for horses to pass over it. The cut was eighty rods long. The banks were too steep for the horses to escape in that way. The trestle existed at the east end of the cut. The engine was behind them, sounding its whistle, and running with unabated speed, until the mare in question, in attempting to leap the trestle, became entangled, fell, and killed herself. The engine was then suddenly stopped. It should have been stopped sooner. In our opinion, the employees of appellant were guilty of gross negligence after the horses got into the cut. The sounding of the whistle before the horses ran into the cut was proper and manifested care and caution. The pursuing of them into the cut and forcing them to attempt a dangerous leap manifested a reckless disregard of human life, and the safety of the property of the citizen. The allegations of the complaint make out a plain and clear case of

wilful negligence. The injury was intentionally and wilfully committed. This relieves the case of any question of contributory negligence. The complaint was sufficient.

The evidence not only justified but required the verdict. It shows that there were seven other horses with the mare of the appellee; that they were forced almost in a body upon the trestle; that six of them went over in safety; that one injured his leg; and the other was killed. The number of horses made the conduct of the employees more reckless than if there had been only one, as it was far more dangerous for eight horses to pass such a place, crowded together, than for one. The trestle was from eight to ten feet high and from twelve to sixteen feet long.

The judgment is affirmed, with costs and ten per cent. damages.