FREMONT, ELKHORN & MISSOURI VALLEY RAILROAD COMPANY v. JOSEPH J. POUNDER.

FILED FEBRUARY 15, 1893.   No. 4907.

1. Railroad Companies: NEGLIGENCE: FENCES: GATES AT FARM CROSSINGS.   Under the statute, where a railway has been in operation in any county of the state for six months, it is its duty to erect and maintain on the sides of its road, except at crossings of public roads and within the limits of cities and villages, suitable and amply sufficient fences to prevent cattle, horses, etc., from getting on the railroad.   Gates at farm crossings are a part of the inclosure of the railroad and must be suitable and amply sufficient to prevent stock from getting on the track.

2. ———: ———: ACTION TO RECOVER VALUE OF STOCK INJURED AND KILLED ON THE TRACK.   Held, That the petition states a cause of action.

3. ———: Negligence in Maintaining Gateway and in Handling Trains: Evidence: Instructions set out in the opinion are not erroneous.

4. ———: ———: ———: Instructions set out in opinion *held* properly refused.

Error from the district court of Seward county.   Tried below before Bates, J.

*John B. Hawley* and *D. C. McKillip,* for plaintiff in error.

*Norval Bros.* and *Lowley, contra.*

Maxwell, Ch. J.

This is an action to recover the value of a horse of the defendant in error which was killed, it is alleged, by the fault of the plaintiff in error, and for injuries to another horse in the amount of $25.   On the trial of the cause the jury returned a verdict in favor of the defendant in error for $140, with interest at seven per cent for one year and four months, and judgment was rendered thereon.   There are four errors assigned in the brief of the plaintiff in error for a reversal of the case:

1. That the petition does not state a cause of action.

2. The court erred in giving instruction No. 8.

3. The court erred in giving instruction No. 1.

4. The court erred in refusing to give defendant's instructions 1, 1½, and 2 asked by the plaintiff in error.

The errors assigned will be considered in their order.

The petition is as follows: " The plaintiff complains of the defendant, for that said defendant is a corporation organized under the laws of the state of Nebraska ; that on or about the 31st day of December, 1889, the defendant was operating a railroad through Seward county, said road being opened for use and used for more than six months in said county; that said railroad of defendant runs through

plaintiff's land on which he lives; that the line of road through the plaintiff's land is fenced, and is fenced for more than half a mile southwest on an adjoining piece of a large draw where there is a bridge of at least 100 feet in length, on which said road is built; that said bridge is not planked on the ties, but is left open, and the fence of said defendant's road runs up to and is fastened to the northeast end of said bridge, said bridge being from ten to twenty feet high from the ties to the ground; that the defendant when it fenced said road through plaintiff's land put in a gate on plaintiff's land to enable him to cross over its track from one side of his farm to the other, but said gate and fence were so poorly made and improperly constructed, with no fastenings of any kind to prevent the wind from blowing it open, and said defendant negligently and carelessly suffered and permitted the said gate and fence to be out of repair, and all of which facts the defendant had due notice, and negligently failed and neglected to repair, fix, fasten, and properly construct the same; that at the date last aforesaid the plaintiff's horses, grazing in plaintiff's pasture on the land aforesaid adjoining defendant's track, passed through the aforesaid defectively constructed and insufficiently secured gate upon the right of way of defendant, and the defendant while so operating its road as aforesaid, by its passenger train going southwest at the time and place aforesaid, by its agents and servants so running said passenger train as aforesaid, saw said plaintiff's horses upon its right of way and road bed of defendant close to the northeast end of the aforesaid bridge; that said train was stopped about 150 feet before reaching the bridge; that at the time said train stopped, the section men of defendant were endeavoring to drive said horses from the bridge toward and past the engine and passenger coaches, and before said horses could be driven up to and past said engine and cars aforesaid the defendant, by its servants and employes, negligently and carelessly started said engine and

cars aforesaid without giving said sectionmen time to get said horses past said engine and cars aforesaid, two of said horses being already scared and frightened were, by the carelessness and negligence of the defendant in starting its engine and cars aforesaid, driven into said bridge, whereby one of said horses was so injured that it died, and the other was greatly injured and damaged, to the plaintiff's damage of $150. Wherefore the plaintiff demands judgment for the sum of $150 and costs of this suit."

It will be observed that the plaintiff below states two grounds for a recovery. First, that the gate was insufficient and known to be such; and second, negligently frightening the horses so that they ran upon the bridge and were injured. The act of June 22, 1867, provides that the railway company "shall, within six months after the lines of such railroad or any part thereof are open, erect and thereafter maintain fences on the sides of their said railroads, or the part thereof so open for use, suitable and amply sufficient to prevent cattle, horses, sheep, and hogs from getting on the said railroad, except at the crossings of public roads and highways and within the limits of towns, cities, and villages, with openings or gates or bars at all the farm crossings of such railroad, for the use of the proprietors of the lands adjoining such railroad, and shall also construct, where the same has not already been done, and hereafter maintain at all road crossings, now existing or hereafter established, cattle guards suitable and sufficient to prevent cattle, horses, sheep, and hogs from getting on to such railroad, and so long as such fences and cattle guards shall not be made after the time hereinbefore prescribed for making the same shall have elapsed, and when such fences and guards, or any part thereof, are not in sufficiently good repair to accomplish the objects for which the same is herein prescribed is intended, such railroad corporation and its agents shall be liable for any and all damages which shall be done by the agents, engines, or trains of any

such corporation, or by the locomotives, engines, or trains of any other corporations permitted and running over or upon their said railroad, to any cattle, horses, sheep, or hogs thereon; and when such fences and guards shall have been fully and duly made, and shall be kept in good and sufficient repair, such railroad corporation shall not be liable for any such damages, unless negligently or willfully done.

"Sec. 2. Any railroad company hereafter running or operating its road in this state, and failing to fence on both sides thereof, against all live stock running at large at all points, shall be absolutely liable to the owner of any live stock injured, killed, or destroyed by their agents, employes, or engines, or by the agents, employes, or engines belonging to any other railroad company or person, running over or upon any such road or there being."

It is the duty of a railroad company to erect "suitable and amply sufficient gates at all farm crossings." We think sufficient is alleged to show that the gate in question did not conform to the statutory requirements and the proof fully sustains the allegations of the petition. The first objection is overruled.

2. The testimony tends to show that the railway in question runs through the lands of the defendant in error for a considerable distance; the railway company put in a farm crossing for him across the track with gates; that the gates are about eighteen feet in length and consist of four boards six inches in width and about seven-eighths of an inch in thickness. There are three cross-pieces to each gate, viz., one at each end and one in the middle. There were no hinges—the gates being held in place by an upright and cleats at each end. The testimony also shows that the railway fence at that place consists of four barbed wires; that the posts were not well braced and by reason of tightening the wires the posts were drawn out of perpendicular line, the effect of which was to render the gate too short

for the aperture and render it liable to be blown open by the wind. There is testimony also tending to show that the section boss had been notified of the condition of the gate and requested to fix the same. This, however, he denies. On December 31, 1889, the gate in question was blown open and the defendant in error's horses, which were in his pasture, escaped through the gateway onto the railway track, and were injured.

The instructions objected to are as follows: "If you find from the evidence that defendant, when it fenced its road through plaintiff's land, put in a gate, but so negligently and carelessly kept up and maintained such gateway across its right of way that plaintiff's horses passed through such gateway upon said defendant's right of way and railroad and were killed or injured in consequence thereof, then you should find for plaintiff." This conforms to the proof. The company is required to "erect and maintain fences on the sides of the railroad suitable and amply sufficient to prevent cattle, horses, sheep, and hogs" from getting on said railroad. A gate is a part of a railway fence and like it must be sufficient for the purpose indicated. There was no error therefore in the giving of this instruction.

3. The first instruction is as follows: "The jury are instructed that the plaintiff brings this action to recover the sum of $150 against the defendant, for, on the 31st day of December, 1889, defendant then, by its servants and employes, negligently and carelessly causing one of said plaintiff's horses to be killed and another to be injured and damaged, such horses being upon the defendant's right of way at the time, and going thereon through a gateway across such right of way, which plaintiff alleges was kept in such negligent manner that such gate was left open so as to permit such horses to pass in upon said defendant's right of way, and that being thereon, defendant, by its servants and employes, negligently and carelessly started

their engine and cars, and their passing upon such railroad then frightening such horses so that they were driven into defendant's bridge." It will be observed that the instruction conforms to the cause of action as set forth in the petition, and there was no error in giving the same.

4. The instructions asked by the railway company and refused are as follows:

"The jury are instructed that under the statutes and laws of this state the defendant railroad company cannot be held liable for any injury done to plaintiff's horses on the ground of negligence of defendant in not having or keeping the fence on the sides of its road, or any part thereof, or any gates therein, in sufficiently good repair to prevent horses from getting on its said railroad, or for any defect in said fence or gates alone, unless you find that the alleged injury to said horses was caused by actual collision with defendant's locomotive, engine, or trains.

"$1\frac{1}{2}$. You are instructed that under the statutory law of this state, to make a railroad company liable for injury to stock for want of a fence, or for want of a sufficient fence such as the law requires the company to erect and maintain to inclose its track, the injury to the stock must be caused by actual collision, that is, it must be done by the agents, engine, or cars of the company, or the willful misconduct of the trainmen in the course of their employment.

"2. You are further instructed that under the pleadings and evidence in this case the defendant cannot be held liable for any injury to plaintiff's horses, unless you find that said horses were willfully driven or frightened onto said bridge by defendant's employes in starting the train, said horses not having been injured by any actual collision or contact with the engine or cars of the train, and said engine and train of defendant's having come to a stop before said horses, or either of them, went on the bridge where injured."

These instructions were properly refused, as they do not

conform to the testimony and the law in the case.   There
is no error in the record, and the judgment is

AFFIRMED.

THE other judges concur.