### ADOLPH WEBER v. C. T. MOSS ET AL.

#### No. 122.

1. **Destroyed Record of Deed—Reregistration.**—A destroyed record of a deed ceases to be notice unless the deed be rerecorded within four years after such destruction. McGee v. Merriman, 85 Texas, 105; and O'Neal v. Pettus, 79 Texas, 255.

2. **Partially Destroyed Record of Deed.**—If the partially destroyed record of a deed is defective as a conveyance, or if the certificate of acknowledgment remaining is not sufficient, the record is evidence of the vice in the instrument, and the defaced record will not operate as constructive notice. See example. The defaced record is only notice of what remains, and if imperfect as record of a deed it is not notice.

APPEAL from Llano. Tried below before Hon. RUDOLPH RUNGE, Special District Judge.

*F. G. Morris* and *David H. Hewlett*, for appellant.—1. The proper registration in Llano County on the 9th of May, 1877, of plaintiff's deed, conveying to him all the land in controversy, had the legal effect of giving constructive notice to all subsequent purchasers of his right to the land; and the subsequent destruction of that record did not, in law, deprive him of the effect of its prior registration, nor did such destruction of the record of his deed, without plaintiff's fault, in any manner operate to the prejudice of his right to the land. Sayles' Civ. Stats., art. 4334;

Fitch v. Boyer, 51 Texas, 349; Throckmorton v. Price, 28 Texas, 605; Wade on Notice, sec. 150.

2. The failure of plaintiff in error to register the deed conveying to him the land in controversy within five years from the date of the destruction of the record containing his deed, did not deprive him of the effect of its proper registration, made prior to the destruction of such record. Johnson v. Skipworth, 59 Texas, 473; White v. Jones, 67 Texas, 638.

3. The evidence conclusively shows that sufficient of the record remained to identify it as a conveyance of the land sued for to plaintiff from the heirs of James Robinson. At least sufficient of said record remained as, under the facts of this case, to put all subsequent purchasers from the grantors therein named upon inquiry, and to charge such subsequent purchasers with all the knowledge as to the state of the title with respect to such grantors and the grantee therein named that proper and prudent inquiry would have disclosed. Sayles' Civ. Stats., art. 4334; Taylor v. Harrison, 47 Texas, 454; Wethered v. Boon, 17 Texas, 143; Harrison v. Boring, 44 Texas, 255.

FISHER, CHIEF JUSTICE.—This is an action by plaintiff in error against C. T. and A. F. Moss, in trespass to try title to 320 acres granted to the heirs of J. M. Lauderdale. J. W. Davis, from whom the defendants Moss purchased, made himself a party to the suit, and his codefendants asked for judgment against him on his warranty.

The case below was tried before the court without a jury, and judgment rendered in plaintiff in error's favor against defendants Moss for only 136 acres of the land sued for, and in favor of defendants in error against J. W. Davis on his warranty for $362.80.

From this judgment plaintiff in error, Adolph Weber, alone prosecutes this writ of error.

*Findings of Fact.*—1. Plaintiff and defendants both deraign title from and under James Robinson, to whom the land in controversy was conveyed by John C. Hays, administrator of the estate of J. M. Lauderdale, deceased, conveying said estate's interest, October, 1843.

2. That said James Robinson died sometime prior to A. D. 1853, seized of the land in controversy; that administration was had on his estate in Bexar County, Texas, and upon partition of the same, June 5, 1853, an undivided interest of 80 acres was awarded to the heirs of Hugh Robinson, deceased, and the balance was awarded and title vested jointly in John Robinson and Agnes Bailie.

3. That the heirs of the said Hugh Robinson, all his children, were Elenor J. Robinson, Thomas H. Robinson, William Robinson, Hugh A. Robinson, and Robert E. Robinson.

4. That on March 20, 1877, the said heirs of Hugh Robinson, and John Robinson and Agnes Bailie, all acting by their duly authorized agents and attorneys in fact, conveyed the land in controversy to the plaintiff in said cause, by warranty deed of said date.

5. That said deed was filed for record in the county clerk's office of Llano County on the 7th day of May, 1877, and duly recorded on the 9th day of the same month.

6. That the record of this deed, except a small portion thereof, by which the land could not be identified, together with nearly all the records of the county clerk's office of Llano County, were destroyed by fire October 11, 1880.

7. That the said deed to plaintiff was again filed for record February 28, 1885, more than four years after the destruction of the said records, and duly recorded March 7, 1885.

8. That four of the five heirs of Hugh Robinson and Agnes Bailie, in consideration of $320, by warranty deed, conveyed the land in controversy to J. W. Davis, January 31, 1885, filed for record in the county clerk's office of Llano County, January 31, 1885, and duly recorded February 18, 1885.

9. That J. W. Davis, in consideration of $640, by warranty deed, conveyed the land in controversy to defendants Moss, October 2, 1884, filed for record October 2, 1884, and duly recorded October 15, 1884.

10. That the said defendants J. W. Davis and C. T. and A. F. Moss, at the times they respectively became the purchasers of said land and when they had their deeds filed for record, had no notice of any outstanding claims against said land, and were innocent purchasers for value.

11. J. W. Davis had no notice of the destroyed record containing the power of attorney, and had never examined the partially destroyed record. The book containing the partially destroyed record was kept in a box in the county clerk's office of Llano County, and all that was legible in the record was, by order of the Commissioners Court, transcribed in new record books. J. W. Davis, before his purchase, examined the new records, and did not examine the old records that were partially destroyed.

12. The record of said deed shown to be destroyed is as follows:

" *State of Texas, County of Llano.*—Know all men by these presents, that we, James Bailey, attorney of the heirs of James Robinson, and Robert Robinson, attorney for the heirs of Hugh Robinson, of the county of Bexar and State of Texas, for and in consideration of $300 to us .. hand paid by Adolph Weber, of the County of Bex.. and State of Texas, the receipt whereof is hereby ....edged before the signing, sealing, and delivering of the .... have granted, bargained, sold, released, and conv..... and by these presents do grant, bargain, sell, relea.. deliver unto the said Adolph Weber, his hei.. all tract or parcel of land lying and

...... Llano, State of Texas, viz.: Three h...... of land originally grante.. certificate No. 64 ..... C, deceased, by deed dated on .... of the Probate Court of Bexar County, m.... of.... A. D. 1843 (No. 69), and purchased by James Robin.... is herewith delivered and made a part hereof, this con.... under a power of attorney to Robert Robinson representing the ... Hugh Robinson, deceased, whose estate has one-fourth interest there.. Also James Bailie, representing the heirs of James Robinson, decease.... estate has three-fourths interest therein, which said powers of atto.. And also the administration of said estates appear of record .... proper office of the custodian of Bexar County records; together w.. and singular the rights, members, hereditaments, and app.. ..ances to the same belonging or in any wise incident or appert.... To have and to hold, all and singular the premises above men....ed unto the said Adolph Weber, his heirs and assigns, forever. And as attorneys in fact hereby bind our principals and their h.... executors, and administrators to warrant and forever defend all and singular the said premises, unto the said Adolph W...., his heirs and assigns, against every person whomsoever lawf.... claiming or to claim the same or any part thereof.

" In testimony whereof, we have hereunto subscribed ou.. names, in' San Antonio, this 20th day of March, A. D. 1877.

" Signed and delivered in presence of Edward Miles, notary public.

" ELLEN J. ROBINSON,

" THOMAS ROBINSON,

" WILLIAM ROBINSON,

" HUGH ROBINSON,

" By their attorney in fact, R. E. ROBINSON.

" JOHN BAILIE,

" JOHN ROBINSON,

" AGNES BAILIE,

" By their attorney in fact, JAMES BAILIE.

"*The State of Texas, County of Bexar.*—Personally appeared before me, Edward....., a notary public of said county, Robert Robinson and James Bailie, both to me well known, wh.... attorney in fact of Ellen J. Robinson, Thomas Robin...., William Robinson, and Hugh Robinson, and John ....., John Bailie, and Agnes Bailie, each as the attorney in ... parties as represented, signed and delivered th.. ..riting on the reverse hereof, and each of .... ..ame to be his act and deed for the .... therein stated. And the free .... Hugh and John Robinson .... ..lerk County Court Llano ...., that the foregoing deed was filed ....cord on the 7th day of May, 1877, at 10 o'cl... duly and correctly recorded on the 9th day of sam.. month and year at 11 o'clock a. m.

" Witness my ..... and official signature this 9th day of May, A. D. 1877.                    " E. R. BEESON, Clerk C. C. L. C."

In order to a full understanding of the case as disposed of by the court below, we give his conclusions of law based upon the foregoing facts:

"(1) The plaintiff, by his purchase of the land in controversy on March 20, 1877, acquired full title in fee simple to the same.

"(2) The record of plaintiff's deed having been destroyed by fire, together with the other records of the county clerk's office of Llano County, and the said deed not having been filed in said office for registration within four years from such destruction, and the defendants having purchased the lands in controversy for a valuable consideration without actual notice of adverse claim, and having their deeds properly and duly registered more than four years after the destruction of the said record by fire, and before the plaintiff had filed his deed for reregistration, the said record was no notice to the defendants of plaintiff's title.

"(3) The defendant Davis, by his purchase from four of the five heirs of Hugh Robinson, acquired title to 64 acres, and by his purchase from Agnes Bailie he acquired title to 120 acres of land, undivided interest, which he conveyed to the defendants Moss.

"(4) That the plaintiff is entitled to 136 acres of the land in controversy; the defendants Moss are entitled to 184 acres, and are further entitled to recover of defendant Davis the sum of $272, with interest thereon at the rate of 8 per cent per annum from the 2nd day of October, 1884.

"(5) That the plaintiff and the defendants Moss recover of defendant Davis all costs.

The record presents two questions for our determination. As formulated by plaintiff in error, they are:

"First. Did the failure of the plaintiff in error to reregister his deed to the land sued for within four years after the destruction by fire of the book containing the record of his deed, deprive him of the legal effect of the proper registration of that deed before the destruction of such record book? And if such is held to be the effect of his failure to reregister his deed within four years after such destruction, then

"Second. Did not sufficient of the record of his deed remain in the clerk's office as served to identify it as a conveyance of the land by, and to exhibit a want of title in, the grantors of Davis to the land sued for? Under the facts exhibited by the mutilated record of the deed, were not all subsequent purchasers from the grantors named therein put upon inquiry as to the true state of the title to the land, and chargeable with all the knowledge as to the state of the title that proper and prudent inquiry would have disclosed?"

1. The rule of law announced in the cases of Magee v. Merriman, 85 Texas, 105, and O'Neal v. Pettus, 79 Texas, 255, settles the first question adversely to the plaintiff in error.

In construing the Act of 1876, these cases hold, that the destroyed record must be restored by rerecording the original within four years from the date of the destruction of the record in order to affect an otherwise innocent purchaser with notice. The facts show that this was not done before Moss acquired his title.

2. In reply to the second question, it may be said, that it is not contended that defendants in error and Davis actually knew of the existence of what is shown by the partially destroyed record, or knew of the registration of that instrument; but upon the contrary, it is apparent that they had no actual knowledge of this instrument or of the record of it, either before its destruction or after. But be this as it may, it is apparent to us that the record of this instrument as it existed after it was partially destroyed was not sufficient to put a subsequent purchaser upon notice of the adverse title of the plaintiff in error. In order for the record of an instrument permitted by law to be recorded to operate as constructive notice, it must be properly proven and acknowledged. And in determining the sufficiency of the instrument in this respect, as well as others, it is to be tested by what appears from the face of the record. If the instrument, as disclosed by the record, is defective as a conveyance, or if the certificate of acknowledgment as there appears is not sufficient when tested by the law upon that subject, the record is evidence of the vice in the instrument, and it will not operate as constructive notice.

The law upon this subject is well stated by Associate Justice Moore in the case of Taylor v. Harrison, 47 Texas, 456: "The record is accomplished by making such instruments, when duly proven and recorded as provided by the statute, operate as constructive notice to creditors and subsequent purchasers of such facts as they would have learned from the record, if examined. But purchasers and creditors are only charged by construction with notice of the facts actually exhibited by the record, and not with such as might have been ascertained by such inquiries as an examination of the record might have induced a prudent man to make. Hence it is a well established rule, that the registration of deeds or instruments required by law to be recorded will not operate as constructive notice, unless they have been acknowledged or proved as prescribed by law. Work v. Harper, 24 Miss., 517; White v. Denman, 1 Ohio St., 110; Bishop v. Schneider, 46 Mo., 472. And while it is a conclusion of law which can not be disputed, that subsequent purchasers and creditors are charged with notice of all the facts shown or exhibited by the record, it has never been held that they were bound or affected by a record which does not give notice of a valid conveyance of the property in question, but merely gives information which, if in fact communicated to such creditor or purchaser, might have been reasonably sufficient to put him upon inquiry, though had such inquiry been made, the existence of a prior encumbrance, not properly recorded, might have been ascertained. It is

therefore held, that a deed not properly acknowledged or proved for record, although in fact duly executed, will not operate as notice of such deed; and though it may have been duly proved or acknowledged for record, if in some material respect it has been improperly recorded, the same result follows from such omission, and the record will only give notice of the existence of such an instrument as that exhibited by it. Terrell v. Andrew County, 44 Mo., 309; Beekman v. Frost, 18 Johns., 544; Sanger v. Craigue, 10 Vt., 555; Jennings v. Wood, 20 Ohio, 266; 2 Washb. on Real Prop., 139.

"And unless there is such a record as the statute prescribes, it certainly does not furnish notice to parties subsequently dealing with the vendor of the former encumbrance or conveyance.    At the time the deed under which the plaintiff claimed the land in controversy in this case was registered, the statute required that the acknowledgment or proof of the execution of the instrument to be recorded should be certified by the officer before whom it is taken or made upon such instrument, and that such certificate should become a part of the record.    The deed which has given rise to this, as registered, does not purport to have upon it this certificate.    And though a certificate, as prescribed by the statute, was in fact endorsed upon the deed, this essential portion of its proper registration was entirely omitted.    The deed, therefore, was not properly recorded, and creditors and subsequent purchasers are not chargeable with notice of it by reason of such defective record."

The record of the partially destroyed deed, while it is insufficient in many respects, does not show that the instrument was properly acknowledged for registration.    It was not acknowledged before any officer authorized to take acknowledgments and is not officially signed by any such officer.

It is insisted that the judgment below is erroneous, because it decrees the plaintiff in error 136 acres of land, and only awards a writ of possession for 120 acres.

It is apparent from the judgment, taken in connection with the findings of the trial court as to the facts and law, that the recital in the judgment that awards a writ of possession for only 120 acres is a clerical error or mistake.    This error is corrected by the record and is harmless, the evident purpose being to award a writ of possession for 136 acres, the quantity of land recovered by the plaintiff in error.

We find no error in the record, and affirm the judgment.

                                                            *Affirmed.*

Delivered March 8, 1893.