BURLINGTON & MISSOURI RIVER RAILROAD COM-
PANY IN NEBRASKA V. E. C. GORSUCH.

FILED APRIL 7, 1896.    No. 6115.

1. **Railroad Companies:** DAMAGES FOR KILLING LIVE STOCK:
NEGLIGENCE.  Evidence examined, and *held* to present a
question of negligence on the part of the defendant in the
action, for the determination of the jury, and to support
their finding on such question.

2. **Instructions:** HARMLESS ERROR.  The giving of an instruc-
tion which is not applicable to the issues or evidence in
a case does not call for a reversal of the judgment when
no prejudice resulted to the rights of the complaining
party.

3. ———: NEGLIGENCE.  The refusal of the trial court to give
certain instructions requested by plaintiff in error, ex-
amined and *held* not erroneous.

4. ———: HARMLESS ERROR.  Where, in the trial of a cause,
instructions are given which in substance are objectiona-
ble and some of which are in conflict, but it appears that
the jury were not misled thereby and no prejudice re-
sulted to the rights of the complaining party, there is
not sufficient cause for a reversal.

ERROR from the district court of Adams county.
Tried below before BEALL, J.

*J. W. Deweese* and *Dilworth & Smith*, for plaintiff
in error.

*Tibbets, Morey & Ferris* and *S. H. Smith, contra.*

HARRISON, J.

The defendant in error instituted this action in
the district court of Adams county to recover of
plaintiff in error damages alleged to have accrued
to defendant in error by reason of the agents and

employes of plaintiff in error so negligently running one of its trains on and over its road and track as to kill, or cause to be killed, one dark brown horse which belonged to defendant in error, of the value of $125. The petition in the case was based upon the statutory liability of the company for injury to live stock on its tracks or line of road, where there had been a failure to comply with the requirements of the statute in regard to building a fence on either side of its line of road, also in the negligent operation of one of the company's engines or trains. A trial of the issues resulted in a verdict in favor of defendant in error, and after a motion for new trial filed in behalf of the company was heard and overruled, judgment was rendered on the verdict. To obtain a review of the rulings of the court during the trial the company has prosecuted error proceedings to this court.

It is contended by counsel for the company that the action was one predicated upon whatever liability might have arisen from the failure of the company to fence its right of way, coupled with the other facts and circumstances incident to the occurrence which resulted in an injury to the animal—a horse—by which it was rendered entirely useless; and not because of any negligence of the employes of the company in the operation of its train. To determine this, and further whether it was error to submit the question of such negligence to the jury, a knowledge of some of the salient points of the testimony becomes necessary. Hence we will, as briefly as may be, state them. The engineer in charge of the engine pulling the train testified in part as follows:

A. Well, when I pulled over the junction switch at Kenesaw, I saw some horses on the track about a mile from Kenesaw; four or five. I think five. I pulled on up towards them and they moved up. They were below a crossing—a road crossing east of the road crossing, and when they came to the crossing they slowed up and let me run within about twenty-five or thirty rods. I gave the alarm then and the horses started and run on.

Q. Where did they start? Were they in the track?

A. Some of them were in the track and some beside the track. Two or three were in the track, but they changed.

Q. State what you did.

A. A mile from the crossing there is another crossing, and when they run up to that crossing I sounded the alarm again and they slowed up until I came within probably twenty rods again, and somewhere near a mile from that crossing is a bridge, so I held back and did not make any alarm or anything until they run into the bridge.

Q. How far was you from them when they run into the bridge?

A. About eighty rods.

Q. What is the condition of the track along there?

A. Well, there is in some places a little cut and in some places a small fill and other places are level. There is two road crossings between where I seen them.

He said further that he had the train under such control from when he sounded the stock alarm until he stopped near the trestle or bridge that he could have stopped at any time before

53

reaching or coming up with the horses, and in respect to the speed of the train said:

Q. About how fast was you running at any one time?

A. Oh, I run probably eight or ten miles an hour until I gave the alarm the first time.

Q. And from that on?

A. I run probably ten or twelve miles an hour after the horses crossed the crossing. They run pretty lively and got ahead quite a ways. I slowed and had to pull up again to catch up. * * * I wasn't any closer than twenty rods and I think I could stop in that distance.

Q. You wasn't closer than twenty rods at any time?

A. Not until they got on the bridge.

He also said that he knew of the existence of the trestle or bridge, and its location.

Q. Did you come to any stop from the time you started the horses until they came into the bridge?

A. No, sir.

Q. Could you have come to a stop?

A. Yes, sir.

Q. Easily?

A. Yes, sir.

The testimony of the fireman agreed in the main with that of the engineer; also, in substance, did that of the conductor. The evidence on the part of the plaintiff tended to show that the train—a freight train—was running at about its usual rate of speed as the witnesses had noticed similar trains on this line at this particular place, and after pulling up near the horses, followed them along the track about ten rods behind them, for a distance of one mile or more, to where

there was a cut, and thirty or forty rods beyond the farther end of the cut was located a bridge; that at this end of the cut the track was almost level with the ground or land on either side; that there was a fill or embankment comprising the approach to the trestle, which, at the bridge, was four, six, or eight feet high; that the engine was about six or ten rods behind the horse which was hurt, when he ran or jumped on the trestle. We infer that the legs of the horse went down into the spaces between the timbers of the trestle, although there was no direct evidence to such effect. All agree, however, that the train was stopped just before it reached the bridge, and the trainmen and some passengers rolled the horse off the bridge and that one of his front legs was broken, which rendered him entirely valueless. There was no fence on either side of the track at the point where the horses went upon it, or any portion of it on which they ran, up to and beyond the bridge where the horse was injured. It seems clear that the testimony was mainly directed to an effort on the part of the defendant in error to prove the want of ordinary care on the part of the men running the train, or to show acts by them which, when taken in connection with all the surrounding circumstances, showed negligence to a degree which rendered the company liable for any injuries to the horse, and on the part of the company to combatting or controverting any such construction or belief, arising from the circumstances and acts which caused the injury to the horse. This being the theory upon which both parties tried the cause, the question of negligence or no negligence was, under the evidence adduced, one for determination by the jury. It was proper to

submit it to them and their answer to this question upon the evidence will not be disturbed.

Of the instructions prepared on behalf of the company and requested to be read to the jury, paragraphs 1 and 2 were as follows:

"1. The court instructs the jury that if they shall find that the horse of the plaintiff got on the track and became frightened and ran along the track and ran into a bridge and injured itself, and that neither the engine nor any part of the train struck the horse, then you will find for the defendant.

"2. The jury are instructed that the evidence in this case will not warrant you in finding a verdict against the defendant. You will therefore decide for the defendant."

The trial judge refused to give either of them and such refusals are assigned for error. It was not error to refuse the first, for the reason it entirely omitted the element of negligence of the parties operating the train, and hence was improper and erroneous. The second was a direction to find the issues for the company, and, as we have concluded there was testimony which raised questions for the consideration of the jury and which it was their province to answer, the second paragraph requested was wrong and the refusal of the judge to give it in the charge to the jury was correct.

The trial judge, at the request of defendant in error, gave an instruction to the jury in which there was quoted from the statute the statement of the liability to the owner of any live stock injured, killed, or destroyed by their agents, employes, or engineers arising against railroad companies from the failure to build fences along the

sides of the track, followed by a further statement that if the jury ascertained from the evidence that the company had neglected to fence its tracks at or along the place stated in the petition setting forth the cause of action, and that the horse was there injured, killed, or destroyed by the agents, employes, or engines of the company, or by the agents, employes, or engines of any other company running over and upon the road, the company became liable.  It is urged that this was erroneous, there being no evidence that the horse was injured or killed by the agents, employes, or engine of the company, except as it was claimed to have been because of the negligence of the employes in charge of the engine and train following the horse closely along the track for a long distance, into the cut, and through it and to the trestle beyond.  The instruction was framed to apply to a case under the provisions of what is commonly known as the "fence law," and was only pertinent to the facts developed in this case in its reference to the failure of the company to build fences along the sides of its road; and to make it fully applicable in view of the issues and the theory upon which the case was tried, should have contained a further statement. embodying the element of negligence as attributable to the parties in charge of the train and the manner in which it was handled or run at the time in question.

Instructions requested by counsel for the company and given were in the following terms:

"The jury are instructed that if the jury find that the horse got on the railroad track for want of a fence such as the law requires the company to erect and maintain to enclose its track, and while on or near its track is frightened by a passing

train and in its fright is injured by falling through a bridge on the line of the railroad, and no negligence or willful misconduct is chargeable to the agents of this company in charge of the train at that time, and where no injury is done to the horse by any actual collision or contact with the engine or cars of the train, the railroad company will not be liable to the owner of the horse for the injury."

"The true meaning of sections 1 and 2 of chapter 72, Compiled Statutes, is that the injury to stock must be caused by the actual collision, that is, it must be done by the agents, engineers, or cars of the company, or the locomotive or trains of any corporation permitted and running over or upon the road, or the willful misconduct of the trainmen in the course of their employment, to make the company liable."

These were doubtless framed and presented by counsel for the company to meet and destroy any impression, erroneous or otherwise, which might have been created in the minds of the jury by the instruction on the same subject given at the request of the counsel for the opposing party, and if construed in connection with such instruction they might be said to have effected the purpose. If construed together, they announced the rule in favor of the company which prevails when the duty to build fences has been performed, that there must have been acts negligently or willfully done. But it may be said that the errors, if any, in this instruction requested by defendant in error in its statements of the law as applicable to the case on trial could not and were not cured by giving other and further instructions on the same subject, framed with a view and purpose of adding to the former and correcting its imperfections or

supplying its deficiencies.    This would be within
a well established doctrine with reference to in-
structions to a jury, but the jury were not misled
nor the rights of the complaining party prejudiced
by the giving of the instruction under considera-
tion;  hence there was no available error.  (*Laba-
ree v. Klosterman,* 33 Neb., 150.)

The instructions numbered 2 and 3 requested
for defendant in error and given were excepted to
by counsel for the company, and their giving is
properly assigned as error.    They were in regard
to the duties of the parties in charge of the engine
or train, to stop it after seeing the horses on the
track, if, by so doing, the injury could have been
avoided, and submitting to the jury the question
of negligence in the running of the train at the
time and place of the injury.    The judge modified
the paragraph of the instructions numbered 3,
and as given it informed the jury that the finding
should be for the company unless the employes
were proven to have been guilty of negligence and
willful misconduct.    This was as favorable to the
company as it could have been if it had been
shown that it had fulfilled the requirements of the
statute as to building fences along its track.
These instructions, when viewed in connection
with all the facts and circumstances of the case,
are not open to any of the objections urged against
them in the argument contained in the brief filed
for the plaintiff in error.

Some of the instructions which were given, and
to which objections were made and have been here
urged, should probably not have been given in
form and substance as they were, but the jury
were not misled by them, nor did any prejudice
result therefrom to the rights of the complaining

party.   There was sufficient evidence to show a
degree of negligence to render the company liable
and to sustain the verdict of the jury. (*Fremont,
E. & M. V. R. Co. v. Pounder*, 36 Neb., 247; *Indian-
apolis, B. & W. R. Co. v. McBrown*, 46 Ind., 229; *Mis-
souri P. R. Co. v. Vandeventer*, 28 Neb., 112.) It
follows that the judgment of the district court
must be

'AFFIRMED.