### Texas Central Railway Company v. M. Pruitt.

#### Decided February 27, 1908.

**1.—Railroads—Fencing Right-of-Way—Statute Construed.**

It is the duty of railroad companies in fencing their roads to construct and maintain such fences, including gates, as will effectually prevent the entry upon their roads of ordinary livestock of ordinary disposition and docility. Failing in this, their roads are not fenced in contemplation of article 4528, Revised Statutes.

**2.—Same—Maintenance of Fence.**

After having fenced their right-of-way, it is the duty of railroad companies to maintain the fences in such condition as to effectually restrain livestock of ordinary disposition and docility from going upon their road; and the expression in article 4528, Revised Statutes, that a railroad company, after having fenced its road, "shall then only be liable in cases of injury resulting from want of ordinary care," has reference, not to the maintenance of the fence, but to ordinary care in the operation of its trains.

**3.—Railroads—Killing Live Stock—Burden of Proof.**

When the owner of livestock proves that his animal was killed on a railroad right-of-way by a locomotive of the railroad company, the burden of proof then devolves upon the railroad company to prove that its road was "fenced" as contemplated by the statute. In the absence of such proof, the company is liable for the value of the stock so killed.

Appeal from the County Court of Erath County. Tried below before Hon. M. J. Thompson.

*Martin & George*, for appellant.

*Nugent & Carter*, for appellee.

LEVY, Associate Justice.—This suit was instituted to recover the value of a mule that was alleged to have been killed by the locomotive of the railway company. The case originated in the Justice Court and was appealed to the County Court, and from the County Court to this court.

The appellant's line of railway runs through the appellee's farm. Appellee's house and barn and pasture are situated on the north side, and the cultivated portion of his farm is situated on the im-

mediate south side of the railway track. Upon each side of the track running through this farm the appellant had, some time previous to the suit, erected a fence. About four years previous to the injury complained of, the appellant placed a gate in its right-of-way fence, on each side of the track, to enable the appellee to get to and from the parts of his farm situated on immediately opposite · sides of the track. It is inferable from the record, and we so assume from the evidence, that these gates were made in the right-of-way fence by appellant in compliance with a statutory demand by the appellee for an opening or crossing through the fence. Appellee had nothing to do with, or control over, the gates or openings. The gate on the north side, leading to the pasture and barn, is the one in question in this case. By taking the testimony of the appellant's section foreman, who built this gate, it was constructed in the first instance as follows: "I took 1x6's and ripped them in two and made lighter gates. The lighter .gates that I put in were called 'slide gates,' with four horizontal pieces made of 1x3 plank and two perpendicular pieces of plank nailed at each end, and the gate was then placed between two upright posts. At one end of the :gate a little piece of plank was put under one of these horizontal 1x3 pieces of plank and nailed to each one of the posts. That held the gate up at that end; and at the other end of the gate there was a little piece of plank that extended out; and when the gate was fastened to the post it rested upon a little piece of plank that was nailed to the post; and when that little piece of plank was opened you could slide the gate between the posts, and then it was open. The gate, at the end where it was fastened to the post, was about four feet high, and the gate, at the end, when it was shut, was about 38 inches high when the gate rested on the ground; and when the gate was put upon this little cross-piece on the post it would be about four feet high at both ends of the gate."

The evidence shows that the appellee turned his mule in the pasture in the late afternoon; and the next morning he found the mule inside the right of way, near the appellant's track, dead, having escaped from the pasture some time during the night. The appellant's locomotive fireman testifies that the mule was struck by the engine during the night; that it was not seen by him or the engineer in time to have avoided the injury; that the engine was running down grade at the rate of about thirty miles an hour at the time it struck the mule. The appellee offered some evidence going to show that the mule got over the gate on to the track. The gate was closed that night when the mule was put in the pasture; and was found closed the next morning, when he looked for his mule. It was not through means of the gate being left open that the mule got out of the pasture. Appellee offered evidence tending to show that the gate was out of repair and was defective and insufficient to turn stock, and had been in such condition for several weeks prior to the injury to the mule; and that he had frequently called attention to its condition to the section foreman of the appellant. Appellee testified to the condition of the gate at the time of the

injury, and which had been in that condition for several weeks prior to the injury, as being: "The gate was very low; one could step over the end." "The cross-piece nailed to the post had been broken at one end and would not hold the gate off the ground to the latch on the post, when so resting on the ground you could step over it." Another witness for the appellee testified to having himself stepped over the gate just before the injury to the mule. The appellant offered evidence as to the condition of the gate at the time of the injury, through its section foreman, who said that the cross-piece on the gate which had been broken off had been nailed on by him, but was broken off again; and that at the time the mule was injured the gate, when shut, would be 38 inches high at the end resting on the ground, without this piece; that otherwise the gate, at the time of the injury, was in fairly good repair and condition.

The appellant has submitted several assignments of error, which we think in effect reach all to the same question. We have therefore determined to consider the assignments as raising the one question. In his eleventh assignment of error, which we take as the basis of the decision of the question presented, it is complained that the court erred in refusing to give the following special charge:

"If you believe from the evidence the defendant railway company had its right of way fenced at the time and place where plaintiff's animal is alleged to have been killed, and that gates had been put in on said right-of-way fence for the use and benefit of the plaintiff in this case, and if you further believe from the evidence that the gate put in by the defendant company was such a gate as a person of ordinary care would build, and that the defendant company used such care as a person of ordinary prudence would exercise under the same or similar circumstances, to keep such gate in substantial repair, then you will find for the defendant company."

The appellant also complains of the charge of the court in this respect, as placing a greater burden on the railway company than the law requires. The appellant contends that this special charge should have been given, because the liability of the railway company for injuries arising from defects in the gate in the fence enclosing its track, occurring after its construction, depends on whether it has used ordinary care, or been negligent, in performing the duty to repair and maintain it. The court's main charge may be susceptible of the construction contended for by the appellant, in that it required of appellant the duty "to keep its said gate in repair," and did not submit the rule of ordinary care as a standard. For the purposes of the decision of the question presented we can take the view of the court's charge as the appellant contends for. The question presented is: Does the liability of the appellant in this case depend upon whether it has used ordinary care or been negligent in performing the duty to repair and maintain the gate? If that is the law, then the special charge should have been given.

There are some cases which seem to hold that under our statute, when a railroad has once fenced in its track its responsibility afterwards is only to use ordinary care to keep it in repair. (Gulf, C. & S. F. Ry. v. Cash, 8 Texas Civ. App., 569; International & G. N.

Ry. Co. v. Erwin, 67 S. W., 466.) These cases seem to be relied on by the appellant as authority for the question presented. But we can not assent to this view of the law. Our conclusion is to the contrary of the rule so announced in these cases.

By the common law the owner of cattle was under the obligation to keep his cattle on his own close and prevent them from going on that of his neighbor. (3 Blackstone Commentaries, 211.) But the common law rule referred to, requiring every man to restrain his live stock, has not been followed by the courts or the Legislature of this State. (Davis v. Davis, 70 Texas, 123.) If the land owner would have a remedy against trespass, he must fence with a suffi-cient fence. (Pace v. Potter, 85 Texas, 473; Finley v. Bradley, 21 S. W., 609.) Before the enactment of the present statute it was held by the courts that a railroad company, not having fenced its road, was not liable for killing stock, unless the plaintiff proved negligence in operation of the cars. (Bethje v. Houston & T. C. Ry., 26 Texas, 605.) It being the followed law that live stock was not forbidden to range on uninclosed land, and in order to regulate the situation as to railways as common carriers, as a means to insure safety of travel to the public as well as to protect live stock, the Legislature passed the present statute. By this article, 4528, Rev. Stats., a railway company was made absolutely liable to the owner for the value of all live stock killed by its locomotive or cars, unless the company "fence in" the road; and in that event the railroad is only then liable for injury resulting from the want of ordinary care. The constitutionality of this statute was attacked in the case of Texas Central Ry. v. Childress, 64 Texas, 346; and in passing on the question the court used this expression, applicable to the question in hand by us, "They are furnished by the statute with the means of protecting themselves from any greater liability than they are subjected to at common law, and if they do not avail themselves of these means they must abide the consequences;" and again, the court, in the same case, says: "The object of the statute was to compel them to fence their road for the purpose of preventing damage to live stock, and for the still more important purpose of protecting the lives and limbs of passengers upon their trains."

We quote from Freund on Police Power, page 651, to show the object of such laws to be exclusion of live stock from the track in order to secure safety to the train and live stock: "In many States legislation has been enacted requiring railway companies to fence their track in order to prevent the straying of cattle thereon. As the requirement tends to protect the safety of the train and passen-gers as well as that of the cattle it is clearly an exercise of the police power." We quote from Elliott on Railroads, vol. 3 (2d ed.), at sec. 1182: "One of the sources of danger to railway trains is from collisions with animals on the track. Such danger has been recognized by nearly all of our State Legislatures, and their statu-tory enactments are for the purpose of reducing this danger as much as possible. When any kind of property is inherently dangerous, or the operation of certain property is necessarily dangerous, it is

within the power of the State, under what is called its police power, to prescribe such regulations in the use of such property as will render consequent danger as small as possible."

Holding the purpose of the law in view, it is apparent that it necessarily follows that in order to make the performance of the duty to "fence in the road" meet the objects which it was intended to accomplish, the railway company is bound to construct such a fence as is effective to prevent the entry upon its road of ordinary live stock of ordinary disposition and docility. In the case of Clarendon Land Co. v. McClelland, 86 Texas, 179, we glean the rule of fences applicable to land owners, when the Supreme Court, speaking through Judge Gaines, said: "It may be admitted that if his enclosure be sufficient to exclude all cattle of an ordinary disposition he would have the right to recover for the trespass of such as were peculiarly vicious and prone to break fences." The rule to so fence as "to exclude all cattle of an ordinary disposition" applies with stronger force in reason to railways than to individuals.

Under this statute, when a railway company has once "fenced in the road" is its responsibility afterwards only to use ordinary care to keep it in repair and maintenance? We do not find authority in the words of, or purpose or object of, the statute for . declaring that rule to measure the liability for killing or injuring live stock on the road. "Shall then only be liable in cases of injury resulting from want of ordinary care," as used in that portion of the article which reads, "if the railway company fence in their road they shall then only be liable in cases of injury resulting from want of ordinary care," does not have reference to the fence or its maintenance or repair after its construction; it refers to the common law liability for injuries to the live stock on its road, occurring through want of ordinary care in the operation of its trains. The article in this connection means to relieve of the absolute liability imposed by the statute when the company "fence in the road," but to not relieve of liability for negligent operation of the train. We quote from Lewis' Sutherland on Stat. Construction, sec. 363: "If a statute is valid it is to have effect according to the purpose and intent of the law invoked. The intent is the vital part, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent." The "essence of the law" in this statute is to effectually restrain live stock of ordinary disposition and docility from going upon the road as a means to secure safety to them and the train. The statute, therefore, must be so construed as to attain the end for which it was enacted.

In the case of Texas & P. Ry. v. Sproles, 105 S. W., 521, decided by this court, Judge Willson, speaking for the court, said: "By the provision of art. 4528, Rev. Stats., to escape the absolute liability it declares in favor of the owner for the value of the stock killed by its locomotives and cars, a railway company, in· the given case, must show that it had its road 'fenced in,' that is, inclosed in such a way as at least, under ordinary circumstances, to effectually prevent stock of the ordinary kind from entering upon its roadbed and tracks. The obvious purpose of the law would not be accomplished

if it should be held that a railway company had fully discharged its duty under it when it had so 'fenced in' its road. To accomplish that purpose the statute must be so construed as to make it the duty of the railway not only to so 'fence in' its road, but after it has done so, to keep it so 'fenced in.' "

The Supreme Court passed on this case. (106 S. W., 325.)

In the case of Smead v. Lake Shore & M. S. Ry., 24 N. W., 761, the following instruction as to a cattle guard was held to set out the law: "If this cattle guard was in good repair and condition, and was of the same general construction and efficiency as cattle guards in general use on railroads, and if such cattle guards have by experience been found sufficient to turn back and restrain cattle, horses and other animals from getting on the railroad, then this cattle guard must be deemed to be sufficient under the law, and your verdict must be for the defendant." This instruction is quoted to show that the defendant's responsibility in the repair and maintenance, as well as use, of that kind of cattle guard, was not made to depend upon the exercise of ordinary care to keep the cattle guard in repair and condition and use of that kind, but whether it would effectually at the time of the injury turn back the animals from the roadway.

In order to avoid the absolute liability imposed by statute, the express duty to "fence in their road" is enjoined by the statute upon the railway company, and we are of the opinion that to accomplish the purpose of this statute the obligation rests upon the railway company, under the statute, to not only "fence in their road," but after it has done so, to keep it so "fenced in," as in the first instance, to exclude live stock of ordinary disposition and docility from entering upon its road. The purpose of the statute is not accomplished if the road is not kept so "fenced in." This much is required of individuals. (Arts. 2496 and 2499, Rev. Stats.)

A gate made as an opening through the fence is a part of the fence, and so far only as the question here presented in this case on the facts of this case, is to be treated as the "fence" of the railway. (Missouri, K. & T. Ry. v. Hanacek, 93 Texas, 446; Fremont, E. & M. V. Ry. v. Pounder, 54 N. W., 509.)

We do not hold that should there occur a given case of injury arising to cattle on account of or on the fence itself, that the charge offered by appellant would not declare the law.

We therefore are of the opinion that the court did not err in refusing to give the special charge that if the appellant used ordinary care to keep its gate in repair it would not be liable.

The appellant further contends that the court erred in not granting a new trial, because the verdict was contrary to the law and evidence. We are of the opinion that this assignment should be overruled. When the appellee proved in this case that the mule was killed on the right of way of appellant, by the appellant's locomotive, then, under the law, in order for the appellant to escape the absolute liability which the statute would impose under such proof, the burden devolved upon the appellant to show that it had the road "fenced in" at the time of the injury. The appellant

offered evidence to show that the road was "fenced in;" and the appellee offered evidence in rebuttal thereof to show that it was not "fenced in." If the proof, therefore, is sufficient to show that the road was "fenced in," then it would further devolve upon the appellee to show, in order to recover, that the employes of appellant were guilty of negligence in the operation of the locomotive. In our opinion the proof is sufficient, in this case, to support the finding and the general verdict of the jury approved by the trial judge, that the gate was permitted to become defective and low enough to allow a person to step over. This defective condition of the gate from this testimony, is apparently not sufficient to effectually restrain a mule of ordinary docility, and consequently the proof would fail to show that the road was "fenced in" according to the requirement of the statute. The road not being "fenced in" under this proof, no further proof was required of the appellee to be made, because the railway company, under the law, was absolutely liable in consequence of its failure to have the road "fenced in." Therefore the verdict is supported by the law and evidence.

We have carefully examined the other assignments, and overrule them. Finding no reversible error in the case, it is ordered affirmed.

### ON REHEARING.

It was the opinion of this court, in affirmance of this case, that under article 4528, Rev. Stats., it was the duty of the railroad company, after it had once fenced in its right of way, to maintain the fence in such condition as, under ordinary circumstances, to effectually exclude live stock of ordinary disposition and docility from entering upon its right of way and tracks. It was contended by appellant that when a railroad company has once fenced in its right of way its responsibility afterwards is only to use ordinary care to keep it in repair. The appellant insisted that because our construction of this article of the statute overruled the cases mentioned in our opinion, the question should be certified to the Supreme Court. We granted the request, and certified the question. The answer of the Supreme Court is as follows:

"We answer the first question that, in our opinion, under article 4528 of our Revised Statutes, it is the duty of a railroad company, after it has fenced in its right of way, to maintain the fence in such condition as under ordinary circumstances to effectually turn live stock of ordinary disposition and docility, and it follows that the second question should be answered in the negative.

"The article of the statute reads as follows: 'Art. 4528. Each and every railroad company shall be liable to the owner for the value of all stock killed or injured by the locomotives and cars of such railroad company in running over their respective railways, which may be recovered by suit before any court having competent jurisdiction of the amount. If the railroad company fence in their road, they shall only then be liable in cases of injury resulting from want of ordinary care.' It is clear that the purpose of the statute was to give immunity for the killing of live stock, solely

upon the condition that the railroad company had fenced its right of way. As to expressing the intent of the Legislature the provision is meagre. It simply says, 'if the railroad company fence its road,' and says nothing about maintaining its fence, but we think it is clearly implied that the fence must not only be erected, but duly maintained as a fence. It was certainly not intended that a railroad company could secure the immunity of the statute by making a fence one day and permitting it to get out of repair the next. Neither is the kind or character of the fence defined. But to fence against live stock clearly means so to enclose the land by an obstruction as to prevent the ingress and egress of such stock. In Ft. Worth & Denver City Railway Company v. Swan (97 Texas, 338), it was held that a partial enclosure did not exempt the company from liability, though it was shown in that case that the animal for the killing of which a recovery was allowed, did not enter upon the company's right of way at the opening. In the case of The Cleveland, Columbus, Cincinnati & Indianapolis Railroad Company v. Swift (42 Ind., 119), the court, in speaking of a gate which had been put in the fence of the company's right of way and which had been left insecure, says: 'If the railroad company allow an opening to be made in the fence and left insecure, it can not any longer be said that the road is securely fenced, and the company is, by the statute, liable for the animals killed, without any proof of negligence on the part of the company.' The condition upon which the immunity is allowed, is that the road shall be fenced; that is, that it shall be sufficiently enclosed to prevent the passage of live stock, and not that it shall exercise ordinary care to see that it is maintained in that condition."

The motion for rehearing is overruled.

*Affirmed.*